Patrick A. Fraioli (SBN 191824)
  pfraioli@ecjlaw.com
David N. Tarlow (SBN 214050)
  dtarlow@ecjlaw.com
Russell M. Selmont (SBN 252522)
  rselmont@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212-2974
Telephone (310) 273-6333
Facsimile (310) 859-2325

Attorneys for Plaintiff vBulletin Solutions, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| vBULLETIN SOLUTIONS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>XENFORO LIMITED, an English private limited company; and KIER DARBY, a British citizen; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. CV 10-8209-R (JEMx)<br><br>**PLAINTIFF VBULLETIN SOLUTIONS, INC.'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS OF AUTHORITIES IN SUPPORT OF MOTION FOR:**<br>**(1) RECONSIDERATION OF ORDER DISMISSING THE SEVENTH AND EIGHTH CLAIMS OF THE FIRST AMENDED COMPLAINT WITH PREJUDICE BASED ON A CHANGE IN THE LAW; AND (2) MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT TO ADD NEW CLAIMS AND DEFENDANTS BASED ON NEWLY DISCOVERED EVIDENCE**<br><br>**JUDGE: Manuel L. Real**<br>**DATE: October 3, 2011**<br>**TIME: 10:00 a.m.** |

13379.16:1261478.2

1
MOTION FOR RECONSIDERATION AND LEAVE TO AMEND

**TO THE COURT, ALL PARTIES AND COUNSEL OF RECORD:**

**NOTICE IS HEREBY GIVEN THAT ON** October 3, 2011 at 10:00 a.m., or as soon thereafter as counsel may be heard by the above-entitled Court, the Honorable Manuel L. Real presiding, located at 312 N. Spring Street, Los Angeles, CA 90012, Plaintiff vBulletin Solutions, Inc. ("Plaintiff") will and hereby does move the Court for: (1) reconsideration of its April 4, 2011 order granting Defendants Kier Darby's and XenForo Limited's ("Defendants") Motion to Dismiss the Seventh and Eighth Claims of Plaintiff's Amended Complaint pursuant to Local Rule ("L.R.") 7-18 and Rule 60(b)(6) of the Federal Rules of Civil Procedure ("FRCP"); and (2) for leave to file a Second Amended Complaint to add new claims and defendants, the existence of which were only discovered a few weeks ago when Defendants finally produced documents responsive to Plaintiff's Requests for Production. A true and correct copy of Plaintiff's [Proposed] Second Amended Complaint is attached to the Declaration of Patrick Fraioli, filed concurrently herewith, as Exhibit "A."

Plaintiff moves this Court for reconsideration under L.R. 7-18 and FRCP 60(b)(6) based on a change of law occurring after the time of this Court's April 4, 2011 decision. In particular, after this Court rendered its decision, the Ninth Circuit Court of Appeals decided *U.S. v. Nosal*, 642 F.3d 781 (9th Cir. 2011), a case with facts almost identical to those here. The Ninth Circuit reversed the Northern District of California decision in *U.S. v. Nosal*, 2010 WL 934257 (N.D. Cal. 2010), a case upon which both Defendants and this Court expressly relied in dismissing Plaintiff's Seventh and Eighth causes of action. The Ninth Circuit *Nosal* decision changed the state of the law such that now, but not at the time this Court dismissed the Seventh and Eighth claims, an employee violates the CFAA even if he is still employed, when he uses in a computer in a manner or for a purpose that exceeds the authority given him by his employer. This change of law makes clear that this Court's order

dismissing the Seventh cause of action is now in contravention of the law of this Circuit. Furthermore, as CPC 502 is the California corollary of and interpreted similarly to the CFAA, and prohibits an even wider range of conduct, this Court should reconsider its dismissal of the Eighth cause of action.

Plaintiff moves this court for leave to amend the complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure ("FRCP") on the grounds that that it is in the interest and furtherance of justice and judicial efficiency to allow the filing of such amended pleading. Recently received documents demonstrate that after Defendant Kier Darby left Plaintiff's employ, he, both on his own and with the help of some of Plaintiff's former employees and contractors, hacked into Plaintiff's computer network and misappropriated Plaintiff's trade secrets and otherwise confidential and proprietary information. The [Proposed] Second Amended Complaint seeks to add new causes of action against Defendants for violation of the CFAA and CPC 502[1] because of this unlawful hacking, conversion of Plaintiff's property, as well as tortious interference with contractual relations and unfair business practices in violation of California Business and Professions Code Section 17200 ("CBPC 17200") for their role in inducing Plaintiff's current and former employees to breach their Confidentiality Agreements and help Defendants access Plaintiff's computers unlawfully and without authorized access, and/or otherwise help Defendants misappropriate Plaintiff's trade secrets. Furthermore, the [Proposed] Second Amended Complaint seeks to add all the parties involved with the aforementioned scheme to unlawfully access Plaintiff's computer networks and

---

[1] These causes of action are separate and distinct from the causes of action for CFAA and CPC 502 addressed that were dismissed from the First Amended Complaint because the First Amended Complaint involved Defendants' unauthorized and unlawful access to Plaintiff's computers while they were still employed by Plaintiff, and the new claims sought to be added involved illegal and unauthorized access on the part of Defendants after they had already ceased working for Plaintiff.

misappropriate its trade secrets as defendants, and assert causes of action against them for trade secret misappropriation, CFAA and CPC 502 violations, and for civil conspiracy and RICO violations against them and the present Defendants.

Plaintiff has been diligent in bringing the instant motion since Plaintiff did not discover the facts giving rise to the new causes of action or the identities of all of the new defendants until Defendants recently produced certain documents to Plaintiff as part of discovery. Moreover, Defendants will not be prejudiced since the documents in question and the operative facts in the [Proposed] Second Amended Complaint have <u>always</u> been known to Defendants because these documents were always in Defendants' possession.

This motion is based upon this notice, the attached memorandum of points and authorities, the attached declaration of Patrick A. Fraioli, the files and records in this matter and on other oral or documentary evidence as may be presented at the hearing of this motion.

DATED: September 5, 2011     ERVIN COHEN & JESSUP LLP
                                                           Patrick A. Fraioli
                                                           David N. Tarlow
                                                           Russell M. Selmont

By:      /s/                     
     Patrick A. Fraioli
     Attorneys for Plaintiff vBulletin Solutions, Inc.

13379.16:1261478.2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Two recent events necessitate that Plaintiff amend its pleading:

(1) After this court dismissed Plaintiff's claims for CFAA and CPC 502 violations, there was a substantial change in law because the Ninth Circuit in *U.S. v. Nosal* (9th Cir. 2011) 642 F.3d. 781 reversed the Northern District of California case of same name that this Court relied on in previously dismissing two claims and which involved nearly identical facts as the instant matter; and

(2) Within the last month, for the first time, Defendants produced documents in discovery that revealed previously unknown facts, including (i) Defendants conspired and collaborated with a few of Plaintiff's employees to obtain secret passwords that then allowed them to unlawfully access Plaintiff's servers without authorization so they could review and obtain Plaintiff's trade secret and otherwise confidential and proprietary information; (ii) Defendants also induced these "moles" they had in Plaintiff's company to violate their Confidentiality Agreements and directly provide trade secret documents and information to Defendants; and (iii) Defendants still are currently in possession of Plaintiff's property that was taken without Plaintiff's knowledge or permission.

**A. The Change in Law Requires Reinstatement of Claims Seven and Eight.**

The change in law by the Ninth Circuit necessitates the reinstatement of the previously dismissed CFAA and CFC 502 claims, in that the previous dismissal is now contrary to controlling law. The recent Ninth Circuit ruling in *Nosal* makes clear that an employee violates the CFAA, even if he is given access to his employer's entire computer network, when he uses a computer in a manner that exceeds the use restrictions placed on him by his employer. At the time this Court rendered its decision on Defendants' Motion to Dismiss Plaintiff's Seventh and

Eighth causes of action, the exact opposite was presiding authority. This Court relied on the Northern District of California case *U.S. v. Nosal* (N.D. Cal. 2010) 2010 WL 934257, the case, which the Ninth Circuit has now reversed, for the proposition that "if a person has permission to access information on a computer, then that person cannot violate the CFAA by engaging in activity that they are authorized to undertake." (See Reporter's Transcript of Proceedings, April 4, 2011, p. 4). As the law upon which this Court relied is no longer good law, and since the Ninth Circuit *Nosal* case found CFAA violations for facts nearly identical to those alleged here (as set forth below), the Court should reconsider its dismissal of the Seventh cause of action. Additionally, CFC 502 is the California corollary of and analyzed similar to the CFAA, and as both claims involve what it means to knowingly access without permission, the Court should also reconsider its dismissal of the Eighth cause of action.

### B. The Newly Produced Documents Justify Amendment

Plaintiff has also recently received documents that make clear that Plaintiff has two distinct types of CFAA and CPC 502 claims against Defendants. The first, for actions taken while Kier Darby was still employed by Plaintiff, are covered by the *Nosal* ruling and were alleged in First Amended Complaint. The second distinct CFAA and CPC 502 claims arise out of the newly discovered facts that Darby and others were hacking into Plaintiff's computer network (obviously without authorization), both on their own and with the help of Plaintiff's former employees in order to misappropriate trade secrets and other confidential information, *after* they were no longer employed by Plaintiff. In addition, Darby and other parties tied to XenForo induced Plaintiff's current and former employees to violate their Confidentiality Agreements with Plaintiff and encouraged and convinced these employees to directly supply Defendants with Plaintiff's confidential and proprietary trade secret information.

The significance of these newly discovered facts is that Plaintiff has new

claims against (1) the existing Defendants, Darby and XenForo, for CFAA and CPC 502 violations, conversion of Plaintiff's property, tortious interference with contract and unlawful business practices in violation of CBPC 17200; (2) against Michael Sullivan, a former employee of Plaintiff who co-founded XenForo with Darby, for CFAA and CPC 502 violations, conversion, tortious interference with contract, unlawful business practices in violation of CBPC 17200 as well as every claim asserted against Darby in the First Amended Complaint; (3) against Ashley Busby, another apparent co-founder of XenForo, for CFAA and CPC 502 violations, conversion, tortious interference with contract, unlawful business practices in violation of CBPC 17200, as well as every claim asserted against XenForo in the First Amended Complaint; (4) against Darren Gordon, Mert Gokciemam and Colin Frei, the current and former employees of Plaintiff who helped Defendants, Sullivan and Busby unlawfully access Plaintiff's computer network, for Breach of Contract, misappropriation of trade secrets, and violation of the CFAA and CPC 502; and (5) against all parties named above for conspiracy and civil RICO violations.

### C. Defendants are not Prejudiced by Amendment

This motion is timely filed and will not result in any prejudice to Defendants because Defendants been aware of these facts since at least the beginning of this action. It is indisputable that Defendants have always had these documents in their possession, but only recently produced them to Plaintiff for the first time. As soon as Plaintiff became aware of the new operative facts and identified the parties necessitating the need to file a Second Amended Complaint, Plaintiff began an investigation to find the "moles" and damage they had caused, and contacted Defendants' counsel to meet and confer about this motion. The only reason that this issue is before the Court so close to the discovery cut-off is that Plaintiff was completely unaware of the facts giving rise to the new claims and parties until about

a month ago, so there was no undue delay on the part of Plaintiff in bringing this motion.[2] Finally, adding the new claims and Defendants, as well as resuscitating the old claims, will likely require substantial new discovery and continuing the currently scheduled discovery cut-off date. However, this case is less than a year old, there have been no previous continuances of the discovery cut-off and trial dates and Courts commonly grant leave to amend in similar situations.

### IV. THIS COURT SHOULD RECONSIDER ITS ORDER DISMISSING THE SEVENTH AND EIGHTH CAUSES OF ACTION IN PLAINTIFF'S FIRST AMENDED COMPLAINT BECAUSE THERE HAS BEEN A CHANGE IN LAW SUCH THAT PLAINTIFF'S ALLEGATIONS AS PLEADED NOW GIVE RISE TO CLAIMS FOR VIOLATION OF THE CFAA AND CPC 502

#### A. Standards for Reconsideration

Pursuant to L.R. 7-18, a motion for reconsideration may be brought where, among other things, there has been "a change of law occurring after the time of such decision." Moreover, " a motion for reconsideration is appropriate under Rule 60(b)(6) based on 'any reasons justifying relief from the operation of the judgment,' including a change in the controlling law." *Bloch v. Prudential Ins. Co. of America,* 2005 WL 6141292 at *3 (C.D. Cal. 2005). Furthermore, the Ninth Circuit has stated that a motion for reconsideration should be granted where there is an intervening change in the controlling law. *Carroll v. Nakatani,* 342 F.3d. 934, 945 (9th Cir. 2003).

#### B. The Ninth Circuit's Decision in *Nosal* is an Intervening Change in Controlling Law and Expressly Reverses a Decision Upon Which This Court

---

[2] Furthermore, Plaintiff is planning on filing an Ex Parte Application for an Order Shortening Time on the instant motion to have it heard by the Court as quickly as possible.

8

MOTION FOR RECONSIDERATION AND LEAVE TO AMEND

**Relied**

When this Court issued its order dismissing Plaintiff's Seventh Cause of Action for CFAA violations, it relied expressly on *United States v. Nosal,* 2010 WL 943257 at *6 (N.D. Cal. 2010) for the proposition that "if a person has permission to access information on a computer, then that person cannot violate the CFAA by engaging in activity that they are authorized to undertake." (Transcript of Proceedings from April 4, 2011, p. 4). In that case, the Northern District of California "was confronted with a central question: does an employee 'act without authorization' or 'in excess of authorized access' if he 'accesses confidential and proprietary business information from his employer's computer that he has permission to access, but then uses that information in a manner inconsistent with the employer's interests or in violation of other contractual obligations, and…intended to use the information in that manner at the time of access." *Id.* at *3. The Northern District held that so long as the employee has been granted access to the computer, no CFAA violation could lie regardless of what the employee's intentions were. Plaintiff had alleged facts almost identical to *Nosal;* thus Court dismissed the CFAA cause of action and its corollary, the CPC 502 claim.

However, after this Court issued its order, the Ninth Circuit reversed the Northern District in *U.S. v. Nosal*, 642 F.3d. 781 (9th Cir. 2011). The Ninth Circuit ruled that where employees obtained trade secrets and other proprietary information by using their user accounts to access the employer's computer system, and the employees' use and disclosure of trade secret and confidential information was restricted by the employer to use for legitimate company business, the employees exceeded their authorized access by accessing information they were entitled to access only under limited circumstances, and thus were in violation of the CFAA. *Id.* at 785.

In its ruling, this Court stated that "Defendant could only have been liable under the CFAA if his employment agreement forbid him from accessing the

confidential information." (Transcript of April 4, 2011 Proceedings, p. 6). The Ninth Circuit's decision in *Nosal* makes clear that this is no longer the law. *Id.* at 788 (holding that "as long as the employee has knowledge of the employer's limitations on that authorization, the employee 'exceeds authorized access' when the employee violates those limitations. It is as simple as that.") Therefore, the change in the controlling law that was previously found to not give rise to a CFAA cause of action, now unequivocally supports a claim for CFAA violations on the allegations as pleaded.

### C. Under *Nosal,* the Facts as Alleged in Plaintiff's First Amended Complaint Sufficiently State a Cause of Action for CFAA Violations

In Paragraph 71 of Plaintiff's First Amended Complaint, under the Seventh Cause of Action for violation of the CFAA, Plaintiff alleges that Kier Darby exceeded his authorized access by accessing Plaintiffs' computers and transferring Plaintiff's confidential and trade secret information for the purpose of using it to create the competing XenForo software. In that same paragraph, Plaintiff also alleges that Darby had previously signed a Covenant Agreement that contained a confidentiality clause that expressly notified Darby that he did not have authorization to use trade secrets or other confidential information other than in the proper performance of his duties. (First Amended Complaint, [Docket #1], ¶71).

Clearly, the facts stated above and alleged in the First Amended Complaint mirror those of *Nosal,* which the Ninth Circuit deemed sufficient to support a CFAA violation. Thus, in light of the change of controlling law, this Court should reinstate Plaintiff's cause of action for CFAA violations.

### D. CPC 502 is the California corollary of the CFAA and is Interpreted Similarly Thereto, so the Ruling in *Nosal* Also Warrants Reinstating the Eight Cause of Action

"California Penal Code §502(c) [is] the California corollary to the CFAA." *Multiven, Inc. v. Cisco Systems, Inc.* 725 F.Supp.2d. 887, 895 (N.D. Cal. 2010); *See*

*also DocMagic, Inc. v. Ellie Mae, Inc.* 745 F.Supp.2d. 1119, 1150 (N.D. Cal. 2010) (CPC 502 is similar to the CFAA, but prohibits a wider range of conduct). "The necessary elements of Section 502 do not differ materially from the necessary elements of the CFAA." *Multiven* at 895. Courts consider CFAA cases "in evaluating how broad an application Section 502 should properly be given." *Facebook, Inc. v. Power Ventures, Inc.* 2010 WL 3291750 at *7 (N.D. Cal. 2010) The language of CPC 502 is almost identical to the CFAA: It prohibits "knowingly access[ing] and without permission…us[ing] any data…computer system, or computer network in order to…wrongfully control or obtain money, property or data. *DocMagic* at 1150.; Cal.Penal Code §502(c)(1); *Compare to* CFAA, 18 U.S.C. §1030(a) (prohibiting "knowingly…access[ing] a protected computer without authorization or exceed[ing] authorized access").

      In dismissing Plaintiff's Eighth cause of action, this Court stated "defendant here is alleged to have violated his contractual obligations by allegedly creating a competing business with the information he accessed while working for plaintiff. However,…violating a contractual term of use does not impose liability under Section 502." (Transcript of April 4, 2011 Proceedings, p. 7). The *Nosal* case makes clear that an employee who violates his contractual obligations by accessing his employer's computers not for proper business purposes but rather to form a competing company is in violation of the CFAA because he has "exceeded authorized access." Since the CFAA and CPC 502 are interpreted similarly, and this Court treated them similarly in dismissing the prior claims, "violating a contractual term of use" should impose liability and the employee should be found in violation of CPC 502 for "knowingly accessing…without permission" those same computers.

V. **THIS COURT SHOULD GRANT PLAINTIFF LEAVE TO AMEND AND FILE A SECOND AMENDED COMPLAINT TO INCLUDE THE NEW CLAIMS AND NEW PARTIES**

    A. **Standard for Leave to Amend**

Rule 15(a) of the FRCP sets forth that leave to amend "shall be freely given when justice so desires." This policy should be applied with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d. 1048, 1051 (9th Cir. 2003). Furthermore, since Rule 15 favors an extremely liberal policy towards amendment, the nonmoving party bears the burden of demonstrating why leave to amend should not be granted. *Senza-Gel Corp. v. Seiffhart*, 803 F.2d 661, 666 (Fed.Cir.1986) (citing *William Inglis & Sons Baking Co. v. ITT Continental Baking Co*., 668 F.2d 1014, 1053 n.68 (9th Cir.1981), cert. denied, 459 U.S. 825, 103 S.Ct. 57, 74 (1982)). In determining whether amendments are appropriate, courts commonly consider four factors: 1) bad faith of the moving party, 2) delay in the proceedings, 3) prejudice to the non-moving party and 4) futility of amendment. *DCD Programs, Ltd. v. Leighton,* 833 F.2d. 183, 186 (9th Cir. 1987).

**B.  Information About the New Claims and New Parties Sought to be Added**

When the First Amended Complaint was filed, Plaintiff did not have evidence that Darby and Sullivan, after they left Plaintiff's employ, accessed Plaintiff's computer network without authorized access, on numerous occasions and in a variety of manners, or that they used this access to misappropriate Plaintiff's trade secrets and convert Plaintiff's property. (Fraioli Dec., ¶3). However, after reviewing the thousands of documents just provided by Defendant in response to Plaintiff's Requests for Production, it became abundantly clear that this was the case. (*Id.*)

Before they left, Darby and Sullivan surreptitiously created online access channels that Plaintiff was unaware of that allowed them to later gain unauthorized access to Plaintiff's servers. On other occasions, Darby and Sullivan enlisted the help of Plaintiff's current and former employees, including Darren Gordon, to have them provide their login identification and passwords so Darby and Sullivan could pose as Plaintiff's employees as they accessed Plaintiff's trade secret and otherwise

confidential and proprietary property. In addition, Darby and Sullivan convinced a variety of Plaintiff's current and former employees, including Darren Gordon, Mert Gokciemam, and Colin Frei (the "Employees") to breach Confidentiality Agreements and directly provide Darby, Sullivan and XenForo with Plaintiff's trade secret information.

These facts give rise to causes of actions for CFAA and CPC 502 violations against Darby, Sullivan, Busby, XenForo, and all the Employees who helped them access Plaintiff's servers without authorization. Darby, Sullivan, Busby and XenForo are all subject to claims for conversion of property, tortious interference with contract and unfair business practices for their role in convincing Plaintiff's employees to breach their Confidentiality Agreements and provide them with trade secret and otherwise confidential and proprietary information. Additionally, Sullivan, Busby and the Employees all are subject to claims against them for misappropriation of trade secrets. Finally, all the parties are subject to claims against them for civil RICO and conspiracy relating to their coordinated plan to unlawfully access Plaintiff's servers to steal trade secrets to aid Defendants in their simultaneous development of the competing XenForo software.

### C. **Plaintiff Only Recently Discovered the Facts Giving Rise to the Claims and Identifying the New Parties, So There Is No Undue Delay**

Courts are generally willing to find undue delay only if there is some "egregious unexplained delay in filing a motion to amend that might warrant denying the Motion." *Ruiz v. Gap, Inc.* 2009 WL 250481 at *2 (N.D. Cal. 2009) (holding that allowing about two months to pass before learning of the facts and notifying opposing counsel of intent to amend was not unreasonable and citing the eight month delay in *Amerisource Bergen Corp. v. Dialysist West, Inc.*, 465 F.3d. 946, 953 (9th Cir. 2006) as an example of an unreasonable delay). Courts have held that there is no undue delay where a party seeking amendment could not have known the facts or theories sought to be added at the time it filed its original

pleading. *Space Systems/Loral, Inc. v. Lockheed Martin Corp.*, 1998 WL 1045304 at *10 (N.D. Cal. 1998). Moreover, the fact that a party did not file its motion until after it made sure there was a "good faith evidentiary basis" to allege the new claims is further evidence that there was no undue delay. *Id.*

In the instant matter, Plaintiff was completely unaware of the facts giving rise to the new causes of action or the identities of the new defendants at the time it filed its Complaint or First Amended Complaint. Plaintiff received the documents that contained the new critical facts at the end of July and in mid-August, after reviewing several thousand documents consisting primarily of transcripts of Skype conversations and emails, discovered the unlawful acts and perpetrators. (Fraioli Dec., ¶4). Since these documents revealed that Plaintiff's had "moles" working for it, Plaintiff spent several weeks further investigating the issues internally and attempting to discover the breadth and depth of the conspiracy and the damage it had caused. (Fraioli Dec., ¶5). Then, on August 25, 2011, Plaintiff met and conferred with opposing counsel by telephone and also sent opposing counsel a meet and confer letter fully apprising them of the situation and seeking a stipulation to avoid filing the instant motion. (Fraioli Dec., ¶6). Furthermore, Plaintiff filed this Motion on the first day permitted after the mandatory 10 day waiting period after meeting and conferring, and Plaintiff also intends to file an Ex Parte Application for an Order Shortening Time to ensure these issues are brought before the court as soon as possible. (Fraioli Dec., ¶7). Thus, Plaintiff acted within very reasonable time parameters after learning about the facts necessitating the need to amend the pleadings and notifying opposing counsel and filing the instant motion. Accordingly, any arguments by Defendant that Plaintiff demonstrated undue delay in bringing the instant motion are wholly meritless.

**D. Defendants Have Always Known About the Facts Giving Rise to the New Claims and New Defendants and will Not be Prejudiced if the Leave to Amend is Granted**

"The need to reopen discovery is not fatal to a motion to amend where facts underlying the new claim come to light during discovery and the party seeking amendment plausibly accounts for the delay." *Ruiz* at *2. Similarly, the prospect of additional discovery needed by the non-moving party does not in itself constitute a sufficient showing of prejudice. *Tyco Thermal Controls, LLC v. Redwood Industrials,* 2009 WL 4907512 at *3 (N.D. Cal. 2009); *Genentech, Inc. v. Abbot Labs,* 127 F.R.D. 529, 530-531 (N.D. Cal. 1989) (fact that amending the pleading might require additional depositions of numerous witnesses across the country who had been previously questioned and might necessitate additional written discovery resulting in delay did not constitute undue prejudice warranting denial of motion to amend).

The possibility of delay alone cannot justify denial of leave to amend. *DCD* at 186; *Genentech* at 531. As the Ninth Circuit explained in *Howey v. U.S.,* 481 F.2d. 1187, 1191 (9th Cir. 1973), "The purpose of the litigation process is to vindicate meritorious claims. Refusing, solely because of delay, to permit an amendment to a pleading in order to state a potentially valid claim would hinder this purpose while not promoting any other sound judicial policy."

The fact that an amendment may require a modification of the trial schedule is not a dispositive showing of prejudice warranting denial of a motion to amend. *Greer v. Lockheed Martin,* 2011 WL 1793379 at *2 (N.D. Cal. 2011) (holding that even though modification of the trial schedule was likely, the motion to amend should be granted). Moreover, the need to postpone the trial date does not constitute undue prejudice to Defendant when Plaintiff can offer plausible reasons for its earlier failure to include such allegations. *Genentech* at 531. The court in *Genentech* held that where the "facts came to light only after the original complaint was filed and during the course of discovery," these were "plausible reasons" sufficient to determine that there was no undue prejudice. *Id.*

In addition, the simple fact that a party seeks leave to amend at or near the

discovery cut-off or trial date is is not dispositive of prejudice. *Onions Etc., Inc. v. Z & S Fresh, Inc.* 2011 WL 2433354 at *4 (E.D. Cal.2011). Courts have gone so far as to allow amendments on the eve of and during trial. *Id.; see e.g. United States v. Pend Oreille Public Utility Dist. No. 1.*, 926 F.2d. 1502, 1511 (9th Cir. 1991); *Howey* at 1190-1191.

As stated above, Plaintiff did not know the facts giving rise to the new claims or identifying the new Defendants until very recently, when Defendants provided documents per Plaintiff's discovery requests. This is critical to the Court's prejudice analysis for two reasons. First, this is identical to the scenario in *Genentech* where "facts came to light only after the original complaint was filed and during the course of discovery" such that continuing the trial date would not be prejudicial. Moreover, there is no element of surprise concerning the new claims or defendants <u>because the documents that revealed the critical new facts were always in Defendants' possession</u>. Thus, Defendants knew all along what Plaintiff has only now learned: that they had conspired with Plaintiff's current and former employees to unlawfully access Plaintiff's servers and misappropriate Plaintiff's trade secrets. Defendants thus has had actual notice of the facts giving rise to these claims since even before this suit was filed. Thus, there is no prejudice in amending the pleadings to include these facts and claims already known by Defendants.

Also cutting against any potential claim of prejudice by Defendants is the fact that this case was filed less than a year ago, has not been extensively litigated, and there have been no previous continuances of the discovery cut-off or trial date. *Genentech* at 531-532.

Simply put, the granting of this Motion will not prejudice Defendant. Based on the facts and case law above, it is clear that any arguments by Defendant that Plaintiff's amendment may reopen discovery, lead to additional discovery, or modify the trial date are not sufficient grounds for denying the instant Motion. Furthermore, Defendant has been in possession of the documents that revealed the

new incriminating facts, so there is no element of surprise as to the new allegations. Defendants had to know this would happen once they provided these Documents.

### E. Plaintiff's Desire for Leave to Amend is Not Premised on any Bad Faith But Rather in the Interests of Judicial Economy

Plaintiff has brought this motion for leave to amend with nothing but good faith and with all appropriate haste. Plaintiff recently discovered new evidence late in the discovery process, through no fault of its own. It moved swiftly to verify the extent of the conspiracy and disclosure of its trade secrets, drafted the new claims, alerted opposing counsel and brought this matter before the Court as soon as it reasonably could have. During the meet and confer process, Defendants' counsel has already accused Plaintiff of seeking leave to amend solely to push back the trial date. (Fraioli Dec., ¶6). This charge has no merit.

Plaintiff has viable, meritorious and just-discovered claims against Defendants and against the new parties. Plaintiff followed the FRCP and acted very reasonably to both investigate internally and to ensure these claims are vitiated. If Plaintiff is forced to file a separate lawsuit, this will result in a waste of judicial resources and possibly conflicting results. However, it is clear to Plaintiff that the interests of justice referred to in Rule 15(a) and the traditional notions of judicial economy would favor addressing all the claims and all the Defendants at once, especially since there is such substantial overlap between the old and new claims, and the intertwined, conspiracy between the new and old defendants. In short, Plaintiff's actions and motivations in seeking leave to amend the pleadings are entirely in good faith.

### F. The Claims are Not Futile

"Before discovery is complete, a "proposed amendment is futile <u>only if no set of facts can be proved</u> under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.* 845 F.2d. 209, 214 (9th Cir. 1988). Plaintiff is confident that a review of the proposed Second

Amended Complaint attached hereto will plainly reveal sufficient factual allegations to support each new cause of action. The documents just produced contain admissions of the bad conduct alleged.[3] Furthermore, since Defendants bear the burden of demonstrating futility (*Senza-Gel Corp.* at 666; *Chang Bee Yang v. Sun Trust Mortg., Inc.* 2011 WL 2433640 at *5 (E.D. Cal. 2011), Plaintiff is content to address any and all of Defendants' arguments in its Reply.

## VI. THE DISCOVERY CUT-OFF AND TRIAL DATES SHOULD BE CONTINUED

Plaintiff fully recognizes that reinstating the dismissed Seventh and Eighth Causes of action from its First Amended Complaint and/or allowing Plaintiff leave to file its Second Amended Complaint enlarges the scope of this lawsuit. With a discovery cut-off date of October 3, 2011, and a trial date set for November 29, 2011, Plaintiff and all Defendants likely would not have enough time to conduct discovery or prepare for trial of the reinstated old claims and the new claims. Moreover, the new defendants certainly could not be expected to prepare for trial in such a brief period of time.

Plaintiff has learned that several of its former employees who assisted Defendants in misappropriating trade secrets and accessing Plaintiff's computers without authorization are located throughout the world. For example, Plaintiff is informed and believes that Darren Gordon lives in Malta, Michael Sullivan in Scotland, Mert Gokciemam in Turkey, and Colin Frei in Switzerland. Some of these people have been sought to be added as new defendants, and each of them is a witness to the new claims sought to be added against Defendants. However, at a

---

[3] The documents produced by Defendants were all designated "attorney's eyes only," so they cannot be attached to the Declaration of Patrick Fraioli. A subset of the documents that contain some of the most glaring admissions will be filed under seal, however, to help give this Court specific insight into Defendants' unlawful conduct. These documents are Bates stamped nos. 958, 1058, 1077, 1078, 1616, 1640, 1641, 1644 and 1811. (Fraioli Dec., ¶8).

minimum, each of these people is a recently discovered fact witness with critical information about the misappropriation of trade secret claim currently standing against Defendants, in that these people directly helped Defendants with the actual misappropriation.

## VII. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Court reconsider its April 4, 2011 order dismissing Plaintiff's Seventh and Eighth Causes of Action and reinstate them into the lawsuit. Plaintiff further respectfully requests that this Court grant Plaintiff leave to file its Second Amended Complaint to add the new claims and parties as described in the Proposed Second Amended Complaint attached hereto. Finally, Plaintiff respectfully requests that this Court continue the discovery cut-off date and trial date to an appropriate date.

DATED: September 5, 2011　　　　ERVIN COHEN & JESSUP LLP
　　　　　　　　　　　　　　　　　　Patrick A. Fraioli
　　　　　　　　　　　　　　　　　　David N. Tarlow
　　　　　　　　　　　　　　　　　　Russell M. Selmont


　　　　　　　　　　　　　　　　By:　____/s/_____
　　　　　　　　　　　　　　　　　　Patrick A. Fraioli
　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff vBulletin Solutions, Inc.