MICHAEL K. GRACE (SBN 126737)
mgrace@gracelaw.com
PAMELA D. DEITCHLE (SBN 222649)
pdeitchle@gracelaw.com
GRACE+GRACE LLP
444 South Flower Street, Suite 1650
Los Angeles, California 90071
Telephone: (213) 452-1220
Facsimile: (213) 452-1222

Attorneys for Defendants XenForo Limited
and Kier Darby

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| vBULLETIN SOLUTIONS, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> XENFORO LIMITED, an English private limited company; and KIER DARBY, a British citizen; and DOES 1-10, inclusive, <br><br> Defendants. | Case No.: CV 10-8209-R (JEMx) <br><br> **DEFENDANTS' OPPOSITION TO MOTION FOR RECONSIDERATION AND MOTION FOR LEAVE TO AMEND FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Date: October 3, 2011 <br> Time: 10:00 a.m. <br> Courtroom: 8 |

Grace+Grace LLP
Intellectual Property
444 South Flower Street, Suite 1650
Los Angeles, CA 90071

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................. 1

II. PROCEDURAL HISTORY ............................................... 1

III. BACKGROUND FACTS .............................................. 3

IV. ARGUMENT .................................................................. 4

    A.   Plaintiff Mischaracterizes Its Motion As One For "Reconsideration" ..................................................... 6

    B.   Plaintiff Has Not Shown Good Cause For The Proposed Amendment ................................................ 7

    C.   Leave To Amend Pursuant to Rule 15 Should Be Denied. .......... 8

        1.   *Plaintiff Unreasonably Delayed Seeking An Amendment* ......................................................... 9

        2.   *Plaintiff's Proposed Amendment Is Brought In Bad Faith* ............................................................ 9

        3.   *Defendant's Proposed Claims Are Futile* ........................... 9

            i.   Plaintiff's Copyright Infringement Claim Fails ........................................................... 10

            ii.   Plaintiff's Declaratory Relief Claim Is Not Cognizable ...................................... 10

            iii.   Plaintiff's Misappropriation of Trade Secrets Claim Is Futile ......................... 11

            iv.   The Tortious Interference With Contractual Relations Claim Fails ......................... 12

            v.   Plaintiff's Contract Claims Based on California Law Fail ...................................... 12

            vi.   The CFAA Claim Fails ....................... 13

            vii.   The California Penal Code § 502 Claim Fails.. 14

            viii.   The Unfair Business Practice Claim Fails ........ 16

Grace+Grace LLP
Intellectual Property
444 South Flower Street, Suite 1650
Los Angeles, CA 90071

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Grace+Grace LLP
Intellectual Property
444 South Flower Street, Suite 1650
Los Angeles, CA  90071

ix.    The Conversion Claim Fails .............................. 16

x.    The Conspiracy Claim Fails............................ 17

xi.    The RICO Claim Fails ......................................... 18

4.    *Plaintiff Would Be Prejudiced By The Proposed*

*Amendment* ............................................................. 19

D.    The Trial Date Should Not Be Moved. ......................................... 20

V. CONCLUSION ................................................................................. 20

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>

3  *AmerisourceBergen Corp. v. Dialysist West, Inc.*

4  465 F.3d 946 (9th Cir. 2006) ........................................................7

5  *Bancroft-Whitney Co. v. Glen*

6  64 Cal.2d 327 (1966) ........................................................12

7  *Boyle v. United States*

8  129 S.Ct. 2237 (2009)........................................................19

9  *Cadence Design Systems v. Avant! Corp.*

10  29 Cal.4th 215 (2002) ........................................................11

11  *Chabner v. United Omaha Life Ins. Co.*

12  225 F.3d 1042 (9th Cir. 2000) ........................................................16

13  *Del Madera Properties v. Rhodes and Gardner, Inc.*

14  820 F.2d 973 (9th Cir. 1987)........................................................17

15  *Diamond Multimedia Systems, Inc. v. Superior Court*

16  19 Cal.4th 1036 (1999) ........................................................11

17  *Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*

18  122 F.3d 1211 (9th Cir. 1997), *cert. denied*, 523 U.S. 1021 (1998) ......17

19  *FAS Technologies, Ltd. v. Dainippon Screen Mfg. Co. Ltd.*

20  2001 WL 637451 (N.D. Cal. May 31, 2001) ........................................11

21  *Forstmann v. Culp*

22  114 F.R.D. 83 (M.D.N.C. 1987) ........................................................8

23  *Freemont Indem. Co. v. Fremont General Corp.*

24  148 Cal.App.4th 97 (2007) ........................................................16

25  *Gestetner Corp. v. Case Equip. Co.*

26  108 F.R.D. 138 (D.Me. 1985)........................................................7

27  *H.J. Inc. v. N.W. Bell Tel. Co.*

28  492 U.S. 229 (1989)........................................................19

Grace+Grace LLP
Intellectual Property
444 South Flower Street, Suite 1650
Los Angeles, CA 90071

*Huong Que, Inc. v. Luu*

    150 Cal.App.4th 400 (2007) ...................................................................... 12

*In Re Rogstad*

    126 F.3d 1224 (9th Cir. 1997) .................................................................... 9

*Johnson v. Mammoth Recreations, Inc.*

    975 F.2d 604 (9th Cir. 1992) ...................................................................... 7

*K.C. Multimedia, Inc. v. Bank of America Tech. & Ops., Inc.*

    171 Cal.App.4th 939 (2009) ............................................................... 13, 16

*Kidron v. Movie Acquisition Corp.*

    40 Cal.App.4th 1571 (1995) ...................................................................... 17

*Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*

    431 F.3d 353 (9th Cir. 2005) ...................................................................... 18

*LVRC Holdings, Inc. v. Brekka*

    581 F.3d 1127 (9th Cir. 2009) .................................................................... 6

*Miller v. Rykoff-Sexton*

    845 F.2d 209 (9th Cir. 1988) ...................................................................... 9

*Moore v. Regents of the Univ. of Cal.*

    51 Cal.3d 120 (1990) ................................................................................. 16

*North Alaska Salmon Co. v. Pillsbury Council, Inc.*

    174 Cal. 1 (1914) ....................................................................................... 11

*Odom v. Microsoft Corp.*

    486 F.3d 541 (9th Cir. 2007) ..................................................................... 18

*Pierce v. Lyman*

    1 Cal.App.4th 1093 (2002) ........................................................................ 12

*Rice v. Fox Broad. Co.*

    330 F.3d 1170 (9th Cir. 2003) ................................................................... 10

*Sony Computer Ent., Inc. v. Connectix Corp.*

    203 F.3d 596 (9th Cir. 2000) ..................................................................... 10

Grace+Grace LLP
Intellectual Property
444 South Flower Street, Suite 1650
Los Angeles, CA 90071

*Syntex Semiconductor Co. Ltd. v. Microchip Tech. Inc.*
    307 F.3d 775 (9th Cir. 2002) ....................................................11

*Trenton v. Infinity Broadcasting Corp.*
    865 F.Supp.3d 1416 (C.D. Cal. 1994) .....................................17

*U.S. v. Nosal*
    642 F.3d 781 (9th Cir. 2011) .....................................................6

*Weimer v. EMC-Chase Quality Loan Service*
    2011 WL 3809918 (C.D. Cal. Aug. 26, 2011) .........................19

*Whyte v. Schlage Lock Co.*
    101 Cal.App.4th 1443 (2002) ...................................................13


**Statutes, Codes & Rules**

Fed. R. Civ. P. 9 ............................................................................18

17 U.S.C. § 201 ...........................................................................10

17 U.S.C. § 301 ...........................................................................15

18 U.S.C. § 1030 ..............................................................6, 13, 14

18 U.S.C. § 1962 ...........................................................................17

28 U.S.C. § 2201 ...........................................................................10

37 C.F.R. § 201.5 ..........................................................................10

37 C.F.R. § 201.7 ..........................................................................10

Cal. Bus. & Prof. Code § 16600 ...................................................13

Cal. Bus. & Prof. Code § 17200 ...................................................16

Cal. Civil Code § 3426.1 ..............................................................11

Cal. Civil Code § 3426.7 ........................................................16, 17

Cal. Penal Code § 502 ..............................................................6, 15

Grace+Grace LLP
Intellectual Property
444 South Flower Street, Suite 1650
Los Angeles, CA 90071

Grace+Grace LLP
Intellectual Property
444 South Flower Street, Suite 1650
Los Angeles, CA 90071

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff's motion for reconsideration and for leave to amend (the "Motion") is a desperate attempt to delay trial now scheduled for in November 2011. From the inception of this case, Plaintiff has dragged its feet and sought a June 2012 trial date. Plaintiff has yet to take a single deposition despite Defendants' willingness to be deposed on multiple agreed dates that Plaintiff then canceled.[1] Plaintiff simply is not ready to go to trial -- it has missed discovery cut-off dates, has no expert witnesses, and has not made the mandatory disclosures required by the Federal Rules of Civil Procedure and the Local Rules. The only way that Plaintiff can avoid the inevitable evidentiary sanctions is to manufacture a reason to move the trial date. The Motion and proposed second amended complaint ("SAC") is nothing more than a fiction designed to buy Plaintiff more time and unnecessarily complicate this case by adding new, foreign parties and unsubstantiated, futile claims. This case should proceed to trial *as scheduled* and against the existing parties who are eager to clear their names from the false claims.

## II. PROCEDURAL HISTORY.

On October 4, 2010, Plaintiff and Jelsoft Enterprises Limited ("Jelsoft") filed a claim against XenForo Limited ("XenForo"), an English limited company, and its founders, Kier Darby, Michael Sullivan, and Ashley Busby in the High Court of Justice, Chancery Division (Intellectual Property). Plaintiff alleged that XenForo and the individuals infringed the copyrights to the vBulletin software and that the individual misappropriated confidential information, breached their employment contracts, and unlawfully interfered with unspecified vBulletin customers.

On October 29, 2010, in this Court, Plaintiff filed a substantially identical Complaint against Darby and XenForo (collectively, "Defendants"). (Doc. No. 1).

---

[1] Plaintiff first's deposition may take place on September 13th if Plaintiff does not cancel again.

1

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

Grace+Grace LLP
Intellectual Property
444 South Flower Street, Suite 1650
Los Angeles, CA 90071

On December 6, 2010, Defendants moved to dismiss the Complaint for lack of personal and subject matter jurisdiction and on *forum non conveniens* grounds. (Doc. Nos. 14, 15 & 16). The motions were denied on February 7, 2011. (Doc. No. 33).

On December 27, 2010, while the motions to dismiss were pending, Plaintiff filed a First Amended Complaint to allege new claims for violations of state and federal "anti-hacking" laws. (Doc. No. 21).

On February 17, 2011, Defendants moved to dismiss Plaintiff's new criminal claims for failure to state a claim. (Doc. No. 34). The motion was granted on April 7, 2011. (Doc. No. 41).

On April 7, 2011, Plaintiff filed a motion for a preliminary injunction. (Doc. No. 42).

On May 9, 2011, the parties participated in the early meeting of counsel at Plaintiffs' counsel's office.

On May 16, 2011, the day that Defendants were set to depose Plaintiff's declarants, Plaintiff withdrew its motion for a preliminary injunction and its witnesses refused to appear for deposition. (Doc. No. 53).

On May 24, 2011, Defendants made their initial disclosures pursuant to Rule 26(a) and as previously agreed by the parties as the date for a mutual exchange. Plaintiff did not make any disclosures.

On June 1, 2011, Plaintiff finally served its initial disclosures and indicated that it had not performed a damages calculation, but "reserves the right to perform a damages calculation after it has retained the services of an expert witness. The categories of damages claimed are: 1) lost profits; 2) future lost profits; 3) loss of goodwill; 4) disgorgement of Defendants' profits; 5) consequential damages; 6) punitive damages; and 7) attorneys' fees and costs." (Declaration of Pamela D. Deitchle ("Deitchle Decl."), Exh. 1). Plaintiff's list of witnesses did not include any persons with knowledge of its financial information or damages claimed. *(Id.).*

2

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

On June 9, 2011, Defendants filed their portion of the joint report required by Rule 26 and the Court's standing order; Plaintiff was not prepared. (Doc. No. 57).

On June 17, 2011, the parties were supposed to exchange all documents identified in their respective initial disclosures. Plaintiff made a limited and admittedly incomplete production. (Deitchle Decl., Exh. 2).

On July 13, 2011, the Court issued its scheduling order and set trial for November 29, 2011. (Doc. No. 61).

On July 22, 2011, the parties were supposed to produce all documents responsive to their respective requests as previously agreed. (Deitchle Decl. at ¶ 4). Plaintiff, however, produced no documents. (*Id.*). In fact, Plaintiff has refused, without explanation, to produce several categories of documents that go to the heart of its case against Defendants. (Deitchle Decl., Exhs. 3-4).

On, 2011, Defendants made their Rule 26(a)(2) disclosure of expert witness testimony, including exchanging the report of Defendants' software expert. Plaintiff disclosed no of expert witnesses and produced no report. (Deitchle Decl., at ¶¶ 7-8 & Exh. 5).

On Labor Day, September 5, 2011, Plaintiff filed the Motion. Subsequent documents in support of the Motion trickled in through September 7, 2011.

On September 8, 2011, Plaintiff filed a "reply" paper in support of its request to shorten time to hear the Motion. (Doc. No. 67). In that paper, Plaintiff stated that it "does not believe expert testimony regarding damages is necessary" and acknowledged that it does not have a damages expert. (Doc. No. 67 at 2:26-3:1).

## III. BACKGROUND FACTS.

Kier Darby, is a British citizen and resident of Reading, England. On June 24, 2010, Darby, Michael Sullivan, and Ashley Busby founded XenForo Limited as an English private limited company. The XenForo founders previously worked together at Jelsoft Enterprises Limited, an English limited company that develops

Grace+Grace LLP
Intellectual Property
444 South Flower Street, Suite 1650
Los Angeles, CA 90071

3

the vBulletin internet forum software. Both Darby and Sullivan still own multiple licenses of vBulletin software and operate websites that run vBulletin software.

Darby joined Jelsoft as a contract vBulletin developer in 2000. By 2006, he had become Jelsoft's lead developer and had, as Plaintiff once described, "unfettered access" to all things vBulletin -- its source code, databases, website, etc. -- because he had autonomous control over the software and was responsible for managing its small staff of developers and contractors subject to the overall direction by James Limm, Jelsoft's founder and CEO.

In the summer of 2007, Jelsoft's assets were acquired by a subsidiary of Internet Brands, Inc., a California-based operator of advertising-based websites that use the vBulletin software. Internet Brands took control of the vBulletin project and required Jelsoft's developers to comply with Internet Brands' instructions regarding software features, designs, and release schedule. The Jelsoft developers and staff members disagreed with Internet Brands' vision for the vBulletin 4.0, including how the software was written and its feature set, styling, and design. By late Spring of 2009, most of Jelsoft's resident staff in England had resigned or tendered their resignation out of frustration with the direction of vBulletin.

After Darby resigned in May 2009, Ray Morgan, who managed the vBulletin 4.0 development project for Internet Brands in California, asked Darby to stay with Jelsoft until June 19, 2009 -- an extra two weeks -- so he could help finish the beta (or test) version of vBulletin 4. Darby agreed. Morgan also proposed that Darby be available to do some work for vBulletin as a contractor, which Darby was willing to do. The parting was amicable and Darby was encouraged to "keep in touch" with the vBulletin staff and community. <u>Contrary to the contentions raised in the proposed amendment, Lynn Tokeshi testified in her deposition that Darby *never* refused to return any document, software, or hardware.</u> (SAC at ¶ 31; Deitchle Decl., Exh. 6).

4

Grace+Grace LLP
Intellectual Property
444 South Flower Street, Suite 1650
Los Angeles, CA 90071

In late June 2009, Darby and his former Jelsoft colleague, Michael Sullivan, decided to create their own internet forum software that is designed to be different from vBulletin. vBulletin is based on an antiquated code architecture is laden with tons of features; Darby and Sullivan wanted to design a lightweight, scalable internet forum software package from scratch with a limited feature set to operate message boards.

On June 24, 2010, more than a year after Sullivan, Darby, and former Jelsoft business manager Ashley Busby had left Jelsoft, they formed XenForo Limited as an English private limit company. On July 28, 2010, the launched xenforo.com to announce the future release of XenForo software in October 2011. The announcement generated substantial public interest, because Darby and Sullivan are well known in the forum software community.

XenForo's imminent entry into the market attracted also attracted Plaintiff's attention. Armed with nothing more than speculation and without benefit of viewing XenForo's code or software, Plaintiff filed a lawsuit in England on the day before XenForo's public launch. Plaintiff also publicly demanded that Defendants not sell and that no one purchase the XenForo software.[2]

To be clear, the XenForo software is the product of nearly 18 months of development from scratch by Sullivan and Darby. Nearly a year after filing the complaints, Plaintiff has been unable to identify even *one line of identical code* out of hundreds of thousands that Defendants allegedly copied. Plaintiff simply wants to smear Darby and drive XenForo out of business by litigating against baseless allegations. Defendants want to put an end to these false allegations.

## IV. ARGUMENT.

The proposed second amended complaint is a massive re-write of the case that has been pending in this Court for almost a year. Plaintiff wishes to add five

---

[2] *See* https://www.vbulletin.com/forum/showthread.php/363883-Internet-Brands-claims-against-Xenforo (dated October 4, 2010).

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

Grace+Grace LLP
Intellectual Property
444 South Flower Street, Suite 1650
Los Angeles, CA 90071

Grace+Grace LLP
Intellectual Property
444 South Flower Street, Suite 1650
Los Angeles, CA 90071

1  new defendants, residents of England, Malta, Switzerland, and Turkey. It seeks to

2  double the number of claims by adding various state law contract and common law

3  counts that are preempted, superseded, or simply not cognizable, plus a range of

4  federal offenses, including a RICO claim.  Plaintiff alleges a parade of horribles to

5  justify these new claims and defendants, none of which survives much scrutiny.

6  The Motion should be denied.

7      A.    Plaintiff's Mischaracterizes Its Motion As One For "Reconsideration."

8      Plaintiff has stylized its motion as one for "reconsideration" of the Court's

9  previous dismissal of state and federal criminal anti-hacking claims against Darby

10  and XenForo based on an alleged change in the law.

11      The dismissed claims were premised on allegations that Darby, while

12  employed by Jelsoft and with "unfettered access" to Jelsoft's computer networks,

13  "hacked" into Jelsoft's computer networks.  These claims were properly dismissed,

14  because (1) XenForo did not exist during the period of the alleged misconduct and

15  (2) Darby had "unfettered access" such that, as a matter of law, he could not have

16  "exceeded access" to Jelsoft's servers or access Jelsoft servers "without

17  authorization."  *See* 18 U.S.C. § 1030(a)(2), (4); *LVRC Holdings, Inc. v. Brekka*

18  ("*Brekka*"), 581 F.3d 1127, 1130 (9th Cir. 2009); Cal. Penal Code § 502.  Dismissal

19  also was appropriate under *U.S. v. Nosal*, 642 F.3d 781 (9th Cir. 2011), because

20  Plaintiff alleged that Darby had, at all relevant times, unrestricted access to Jelsoft's

21  computers and, as such, could not have violated any access restrictions (or

22  "exceeded access") in violation of the Computer Fraud & Abuse Act ("CFAA").

23      In its Motion, Plaintiff is not seeking leave to *rewrite* the claims that the

24  Court dismissed with prejudice months ago.  Instead, Plaintiff has written up new

25  claims for alleged violations of the CFAA and California Penal Code § 502 by

26  Defendants and others.  (*See* SAC at ¶¶ 84-95).  Thus, there is nothing for the

27  Court to "reconsider."  Instead, the Court must determine whether Plaintiff should

28  be allowed to file a second amended complaint on the eve of trial.

6

B.    Plaintiff Has Not Shown Good Cause For The Proposed Amendment.

Normally, motions for leave to amend are determined pursuant to Rule 15, which provides for the liberal amendment of pleadings.  Rule 15, however, "is trumped by Rule 16 once the district court file[s] pretrial scheduling order." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 952 (9th Cir. 2006). This distinction is important, because unlike the liberal requirement for amendment under Rule 15, a party must *first* satisfy the "more stringent 'good cause' showing required under Rule 16." *Id.*  This heightened "good cause standard" acknowledges that a scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) at 610 (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D.Me. 1985)).

The good cause standard for a late amendment of a pleading "primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609.  "If that party was not diligent, the inquiry should end." *Id.*  The issue, therefore, is "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Amerisourcebergen Corp.*, 465 F.3d at 953.

Defendant has not been diligent in seeking the proposed amendment.  The identities of the new, proposed defendants have been known to Plaintiff all along. Indeed, Plaintiff is already maintaining an action against Defendants *and Busby and Sullivan* in England.  If the allegations in the proposed SAC are true -- and they are not -- then Plaintiff should have known years ago that Darby had "altered" access levels before he left Jelsoft's employ and had refused Plaintiff's demands for the return of proprietary property and information years ago.  (SAC at ¶¶ 27-32). Plaintiff also would have known if Darby had used another's credentials to access Jelsoft's servers, because Plaintiff's access logs would have shown a different IP address.  Indeed, Plaintiff contends that its own employees and/or contractors

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

provided and/or knew of Defendants' alleged malfeasance several years ago. Such knowledge or awareness should be imputed to Plaintiff. Clearly, there has been no urgency on the part of Plaintiff to add new claims or parties that it should have known about years ago.

Plaintiff now seeks leave to allege an entirely new set of facts against new (foreign) parties in a desperate attempt to prolong the litigation. Plaintiff has never been interested in prevailing on the merits or bringing the truth to light. Indeed, Plaintiff filed and then unilaterally withdrew a motion for a preliminary injunction days before the opposition was due rather than make its witnesses available for cross-examination. Plaintiff's goal all along has been to exert maximum <u>financial</u> pressure on Defendants by forcing them to litigate the same case on two fronts (here and England) in the hopes that Defendants will succumb to attrition and exit the marketplace without Plaintiff ever having to substantiate its scurrilous claims or account for its actions.

Plaintiff's efforts have not been successful, which is why it now seeks leave to add new claims against foreign defendants regarding conduct that occurred entirely overseas. Good cause does not exist to delay this case from proceeding to trial against Defendants pursuant to the schedule set by the Court.

C. <u>Leave To Amend Pursuant to Rule 15 Should Be Denied.</u>

Even if Plaintiff could establish good cause warranting leave to file a tardy amendment under Rule 16, Defendant still fails the requirements of Rule 15. *See Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987) (party seeking to amend pleading after date specified in scheduling order must first show "good cause" for amendment under Rule 16(b), then, if "good cause" be shown, the party must demonstrate that amendment was proper under Rule 15).

Whether leave to amend should be granted pursuant to Rule 15 is generally determined by considering the following factors: (1) undue delay; (2) bad faith; (3)

Grace+Grace LLP
Intellectual Property
444 South Flower Street, Suite 1650
Los Angeles, CA 90071

8

futility of the amendment; and (4) prejudice. *In Re Rogstad*, 126 F.3d 1224, 1228 (9th Cir.1997). Each factor of Rule 15 weighs against granting leave to amend.

### 1. Plaintiff Unreasonably Delayed Seeking An Amendment.

As described above, Plaintiff unreasonably delayed seeking an amendment when the alleged facts have been in its possession since 2009.

### 2. Plaintiff's Proposed Amendment Is Brought In Bad Faith.

There also can be no doubt that Plaintiff is motivated by a bad faith desire to multiply the proceedings, increase the costs of litigation and to delay justice. Plaintiff is facing a looming trial date when it will not have an opportunity to put on very much evidence, because of failures to comply with Rule 26 obligations that make evidentiary exclusion mandatory under Rule 37. Granting the Motion would reward Plaintiff's failure to prosecute its case at the expense of litigants who want nothing more than to simply clear their names in a vicious smear campaign warred by Plaintiff.

Notably, Plaintiff sought to amend after being informed of Defendants' prospective motion for summary judgment that will dispense with every claim asserted in the First Amended Complaint. Plaintiff's Motion is nothing more than a tactic to delay and further complicate a case in which, as described below, there are no disputed facts.

### 3. Plaintiff's Proposed Claims Are Futile.

Plaintiff should not be allowed to amend a pleading to allege futile claims. A claim is futile if "no set of facts can be proved under the amendment that would constitute a valid claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

As an initial matter, none of Plaintiff's claims can succeed because it has no evidence of damages. Its initial disclosures state that damages will be the subject of expert testimony. Now that the expert witness disclosure cut-off has passed, Plaintiff unequivocally states that it will not need a damages expert. Plaintiff has

Grace+Grace LLP
Intellectual Property
444 South Flower Street, Suite 1650
Los Angeles, CA 90071

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

identified *no witness* who is likely to have discoverable information as to its finances, sales, or claimed damages. (Deitchle Decl., Exh. 1). Thus, to the extent that Plaintiff's claims require evidence of loss or damages, it should be precluded from offering any witness testimony as to such elements.

i.     Plaintiff's Copyright Infringement Claim Fails.

Plaintiff cannot prevail on its claim for copyright infringement. Copyright infringement requires proof that each defendant copied protected elements of Plaintiff's copyrighted works. *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1174 (9th Cir. 2003). Plaintiff has not identified any *expression* in the XenForo software that has been *copied* from any of Plaintiff's copyrighted works.

In its unilaterally withdrawn motion for a preliminary injunction, Plaintiff argued that it was likely to succeed on the merits of it copyright infringement claim because the XenForo internet forum software and the vBulletin internet forum software had similar functionality (*e.g.* "like" buttons, search engines, video embedding features, Facebook and Twitter links, etc.). Notwithstanding that such features are present on virtually every blog or social networking site, shared functionality is not actionable under copyright law. *See Sony Computer Ent., Inc. v. Connectix Corp.*, 203 F.3d 596, 606 (9th Cir. 2000) ("If [plaintiff] wishes to obtain a lawful monopoly on the functional concepts of its software, it must satisfy the more stringent standards of the patent laws.").

The fact is that nothing in the XenForo software is copied from or is substantially similar to expression protected by Plaintiff's copyright registrations. (Deitchle Decl., Exh. 5). Plaintiff's copyright infringement claim is futile.

ii.     Plaintiff's Declaratory Relief Claim Is Not Cognizable.

Plaintiff's second claim for declaratory relief cannot succeed, because it is simply not cognizable. The Declaratory Judgment Act limits relief to a declaration of "rights and other legal relations of any interested party." 28 U.S.C. § 2201; 17 U.S.C. § 201(e); 37 C.F.R. §§ 201.5 & 201.7(c); *Syntek Semiconductor Co. Ltd. v.*

Grace+Grace LLP
Intellectual Property
444 South Flower Street, Suite 1650
Los Angeles, CA 90071

10

*Microchip Tech. Inc.*, 307 F.3d 775, 781-82 (9th Cir. 2002). It does not empower the Court to transfer ownership of tangible or intangible property (including copyright applications or registrations), order an accounting, impose a constructive trust, or order the disgorgement or transfer of monies. (*See* SAC at ¶ 58). Besides, even if Plaintiff were to prevail on each of its claims, none of the remedies include the relief sought by Plaintiff in its request for declaratory relief.

iii.     Plaintiffs' Misappropriation of Trade Secrets Claim Is Futile.

Under California law, "misappropriation" of trade secrets means "[d]isclosure or use of a trade secret of another without express or implied consent[.]" Cal. Civil Code § 3426.1. "[A] *claim* for misappropriation of a trade secret arises for a given plaintiff against a given defendant only once, at the time of the initial misappropriation," *i.e.*, when a alleged trade secret is misused or unlawfully disclosed. *Cadence Design Systems, Inc. v. Avant! Corp.*, 29 Cal.4th 215, 224 (2002) (emphasis in original).

Plaintiff has alleged that each defendant unlawfully used and disclosed Plaintiff's trade secrets. (FAC at ¶¶ 63). The claim arose from the alleged misuse and unlawful disclosure of Plaintiff's alleged trade secret information occurred *outside* of California in England, Malta, Switzerland and/or Turkey where each defendant resides or resided. (*Id.* at ¶¶ 9-15). Because Plaintiff's claim arose out of foreign conduct, Plaintiff cannot avail itself of California state law remedies for misappropriation of trade secrets. *FAS Technologies, Ltd. v. Dainippon Screen Mfg. Co.*, Ltd., 2001 WL 637451, *2 (N.D. Cal. May 31, 2001) (citing *Diamond Multimedia Systems, Inc. v. Superior Court*, 19 Cal.4th 1036, 1058–1059 (1999)); *see also North Alaska Salmon Co. v. Pillsbury Council, Inc.*, 174 Cal. 1, 4 (1914) (presumption against applying state laws extraterritorially to encompass conduct occurring in a foreign jurisdiction). Plaintiff's misappropriation of trade secret claim fails as a matter of law.

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

iv.    The Tortious Interference With Contractual Relations Claim Fails.

For similar reasons, Plaintiff's claim that Darby, Sullivan, Busby and XenForo induced others to breach contracts also fails.  (SAC at ¶¶ 96-106).  Each of the alleged wrongful acts -- requesting access to computers and requesting disclosure of trade secret information -- occurred in England, not in California.  (SAC at ¶¶ 101-102).  Again, California law does not apply extraterritorially to govern conduct committed in foreign countries.  The claim fails as a matter of law.

v.    Plaintiff's Contract Claims Based on California Law Fail.

Plaintiff has alleged that Darby and the individual defendants breached certain employment contracts.  (SAC at ¶¶ 75-79).  Plaintiff also has alleged that Darby and Sullivan breached a duty of loyalty to Plaintiff. (SAC at ¶¶ 80-83).

As an initial matter, at all relevant times, Darby and Sullivan were employed by *Jelsoft Enterprises Limited*, a private limited company organized under English law, and performed their job duties exclusively in England.  (SAC, Exhs. A-B).  Although Plaintiff may have acquired the *assets* or stock of Jelsoft through a series of transactions and may be considered the "owner" of Jelsoft, neither Darby nor Sullivan were ever employed by Plaintiff and, consequently, never have owed Plaintiff any duty of loyalty.  There simply is no relationship between Plaintiff and Darby and Sullivan -- who were employed by *Jelsoft* -- that gives rise to a duty of loyalty to another entity under California law.  *Pierce v. Lyman*, 1 Cal.App.4th 1093, 1102 (1991).

Even if Darby owed Plaintiff a duty of loyalty under California law, the claim still fails as a matter of law.  *Huong Que, Inc. v. Luu,* 150 Cal.App.4th 400, 414 (2007); *see Bancroft-Whitney Co. v. Glen*, 64 Cal.2d 327, 346 (1966) (employees may seek other employment and make "preparations to compete" before resigning).  Likewise, Darby and Sullivan cannot have breached duty of loyalty to Jelsoft by allegedly breaching a post-termination covenant not to compete executed

Grace+Grace LLP
Intellectual Property
444 South Flower Street, Suite 1650
Los Angeles, CA 90071

12

after they started working for Jelsoft, because such contracts are void in California and one owes no duty of loyalty to a *former* employer. Cal. Bus. & Prof. Code § 16600; *Whyte v. Schlage Lock Co.*, 101 Cal.App.4th 1443, 1462-63 (2002). Finally, to the extent that Plaintiff's claim is premised on misappropriation of trade secret theory, such claim is preempted by the California Uniform Trade Secrets Act. *K.C. Multimedia, Inc. v. Bank of America Tech. & Ops., Inc.*, 171 Cal.App.4th 939, 958-59 (2009).

California law also does not govern foreign employment agreements or any alleged breach thereof that occurred outside of California. (SAC, Exhs. A-E).[3] Even if Darby and the others breached their agreements with Jelsoft in England, Switzerland, or Turkey, such breaches are not actionable under California law, which does not regulate conduct that occurs outside of the state.

Finally, Plaintiffs claim against Gordon, Frei, and Gokceimam for breaches of their 2010 independent contractor agreements fails, because each agreement is between the individuals and *Internet Brands, Inc.* (which is not a party) and each contain a mandatory arbitration clause that divests this Court of jurisdiction. (SAC, Exhs. D at p.66, E at p.79 & F at p.86).

vi.    The CFAA Claims Fails.

The proposed second amended complaint does not identify which provision of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, was allegedly violated by the defendants. Defendants presume that Plaintiff seeks leave to add a claim for a violation of § 1030(a)(4), which was the claim previously dismissed by the Court.

To successfully bring an action under Section 1030(a)(4), a plaintiff must show that the defendant: (1) accessed a "protected computer," (2) without authorization or exceeding such authorization that was granted, (3) "knowingly"

---

[3] The December 1, 2005 agreement between Frei and Jelsoft is governed by the laws of England and Wales. (SAC, Exh. E at p.73).

13

Grace+Grace LLP
Intellectual Property
444 South Flower Street, Suite 1650
Los Angeles, CA 90071

and with "intent to defraud," and thereby (4) "further[ed] the intended fraud and obtain[ed] anything of value," causing (5) a loss to one or more persons during any one-year period aggregating at least $5,000 in value. 18 U.S.C. § 1030(a)(4). The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to the offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred *because of interruption of service*." 18 U.S.C. § 1030(e)(11) (emphasis added).

There are no allegations that any defendant committed any action with intent to defraud *and* to further that intended fraud as required by the CFAA. (SAC at ¶¶ 87). Plaintiff contends only that the defendants' alleged acts possibly resulted in their misappropriation of Plaintiff's trade secrets.

Plaintiff also has not alleged that the defendants interrupted Plaintiff's service or caused it to suffer any "loss" as defined by the Act. Plaintiff merely concludes that defendants' alleged misappropriation of trade secrets "caused losses" between $5,000 and $12,000,000. (SAC at ¶ 88). Further, Plaintiff does not claim that its protected computers suffered any "damage," *i.e.*, "impairment to the integrity or availability of data, a program, a system, or information" as a result of defendants' alleged conduct. 18 U.S.C. § 1030(e)(8).

Plaintiff's claim for a violation of the CFAA is a fiction and cannot succeed.[4]

vii.    The Cal. Penal Code § 502 Claim Fails.

Plaintiff's proposed claim for a violation of California Penal Code § 502 (the state law corollary for the CFAA) fails for the same reasons. Again, Plaintiff does not specify which provisions of Section 502 were allegedly violated by the

---

[4] The claim also fails as a matter of law against XenForo Limited (a business entity), because throughout the relevant period XenForo did not even exist and cannot be a "violator" within the meaning of the CFAA. *See* 18 U.S.C. § 1030(g) (providing a civil remedy against "the violator").

Grace+Grace LLP
Intellectual Property
444 South Flower Street, Suite 1650
Los Angeles, CA 90071

14

1  defendants, but Defendants will assume that Plaintiff seeks to add a claim for

2  violations of Section 502(c).

3    Penal Code § 502 authorizes a civil suit if a computer system is accessed

4  "without permission" by an outsider who thereby causes the victim some "damage

5  or loss." Cal. Penal Code § 502(c), (e). The statute makes clear that the "damage"

6  or "loss" refers to a damaged, lost, or deleted computer system, computer network,

7  computer program, or data and the costs to verify such damage and loss. Cal.

8  Penal Code § 502(e).

9    Plaintiff has not alleged that it suffered any "damage or loss" for which Penal

10  Code § 502 provides any remedies. Again, at most, Plaintiff complains that the

11  defendants misappropriated Plaintiff's allegedly confidential information, but

12  complains of no damaged, lost, or deleted data. In fact, on September 9, 2011,

13  Plaintiff's Chief Technology Officer confirmed that Plaintiff has suffered no from

14  damage, loss or deletion of data.

15    Further, to the extent that defendants' alleged "unlawful access" occurred

16  during the course of their employment at Jelsoft and/or with Plaintiff, recovery is

17  barred by Section 502(h)(2), because Plaintiff cannot allege that it was "injured."

18  Under the statute, "injury" is defined as "any alteration, deletion, damage, or

19  destruction of a computer system, computer network, computer program, or data

20  *caused by the access, or the denial of access to legitimate users of a computer system,*

21  *network, or program.*" Cal. Penal Code § 502(b)(8) (emphasis added).

22    Again, Plaintiff alleges only that defendants "misappropriat[ed] and

23  obtain[ed] valuable" information and "received benefits" from their conduct.

24  (SAC at ¶¶ 92-93). There was no denial of service or alteration, deletion, damage

25  or destruction of Plaintiff's networks. The claim, therefore, fails.[5]

26

27

28    [5] The claim further fails as a matter of law against XenForo Limited for the same reasons that the CFAA claim fails -- XenForo did not exist and no allegations have been made against it.

Grace+Grace LLP
Intellectual Property
444 South Flower Street, Suite 1650
Los Angeles, CA 90071

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

viii.    The Unfair Business Practices Claim Fails.

California's Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000).

Plaintiff's §17200 claim is premised on allegations that Defendants misappropriated Plaintiff's trade secrets and infringed Plaintiff's copyrights. (SAC at ¶ 108). The underlying causes of action, however, preempt a subsequent claim for relief under § 17200. *See* Cal. Civ. Code § 3426.7; *K.C. Multimedia, Inc.*, 171 Cal.App.4th at 962; 17 U.S.C. § 301(a) (copyright infringement). Plaintiff's claim, therefore, fails as a matter of law.

ix.    The Conversion Claim Fails.

Plaintiff also cannot state prevail on a claim for conversion. (SAC at ¶¶ 110-114). Conversion is the wrongful exercise of dominion over the tangible property of another, <u>not</u> intangible property such as trade secrets, customer lists, business strategies, etc. *Fremont Indem. Co. v. Fremont General Corp.*, 148 Cal.App.4th 97, 119 (2007). The proposed conversion is claim is premised entirely on the alleged taking of intangible, electronic information stored Plaintiff's computers. (SAC at ¶ 111-112).

Conversion also requires an "actual interference" with "ownership right or possession." *Moore v. Regents of the Univ. of Cal.*, 51 Cal.3d 120, 136 (1990). Plaintiff contends only that Defendants "have deprived Plaintiff of the *exclusive* control" of certain intangible items. (SAC ¶ 112). On its face, the proposed SAC states that Plaintiff has, at the very least, some possession of the property. In other words, Plaintiff has not alleged that it has been *dispossessed* of any property, which is a threshold element of a conversion claim.

Grace+Grace LLP
Intellectual Property
444 South Flower Street, Suite 1650
Los Angeles, CA 90071

16

1       The proposed conversion claim is premised on allegations that Defendants
2   improperly acquired and used Plaintiff's trade secret property.  (SAC ¶¶ 60 & 111)
3   (Plaintiff makes no distinction made between "Trade Secret Material" and
4   "Property" allegedly converted).   Again, the CUTSA provides the exclusive civil
5   remedy for misappropriation of trade secrets.  Cal. Civ. Code § 3426.7.   Plaintiff is
6   not seeking to allege an alternative theory, but is attempting to evade the
7   restrictions of the CUSTA by calling misappropriation of trade secrets claim
8   something else.  Likewise, to the extent that Plaintiff complains that Defendants
9   "took" Plaintiff's copyrighted materials, such a "conversion" claim also is
10  preempted by the Copyright Act.  *Del Madera Properties v. Rhodes and Gardner,*
11  *Inc.*, 820 F.2d 973, 977 (9th Cir.1987); *Trenton v. Infinity Broadcasting Corp.*, 865
12  F.Supp.2d 1416, 1428 (C.D. Cal. 1994).

x.    <u>The Conspiracy Claim Fails.</u>

14      Plaintiff's claim for conspiracy to misappropriate trade secrets (SAC at ¶¶
15  115-120) also fails, because civil conspiracy is not a separate and distinct cause of
16  action under California law.  *Entm't Research Group, Inc. v. Genesis Creative*
17  *Group, Inc.,* 122 F.3d 1211, 1228 (9th Cir.1997), *cert. denied*, 523 U.S. 1021 (1998);
18  *Kidron v. Movie Acquisition Corp.,* 40 Cal.App.4th 1571, 1581 (1995) ("civil
19  conspiracy" is a "legal doctrine that imposes liability on persons who, although not
20  actually committing a tort themselves, share with the immediate tortfeasors a
21  common plan or design in its perpetration.").

22      The futility of the claim is underscored by Plaintiff's simultaneous allegation
23  that the defendants are conspirators *and* tortfeasors.  (SAC at ¶¶ 116-118).  As a
24  matter of law, Plaintiff cannot have it both ways -- one cannot misappropriate
25  trade secrets and also conspire with others to assist in the misappropriation of
26  those trade secrets.  The claim, therefore, is not cognizable and is futile.

27
28

Grace+Grace LLP
Intellectual Property
444 South Flower Street, Suite 1650
Los Angeles, CA 90071

17

xi.     The RICO Claim Fails.

Perhaps the most ridiculous of Plaintiff's proposed new claims is for a violation of the Racketeer Influence and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1962, for alleged wire fraud.  (SAC at ¶¶ 121-133).

The elements of a RICO claim are (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as "predicate acts") (5) causing injury to plaintiff's business or property.  *Living Designs. Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005), *cert. denied*, 547 U.S. 1192 (2006).  Wire fraud requires proof of (1) the formation of a scheme or artifice to defraud; (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud."  *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007).

Plaintiff has allege that XenForo Limited is an criminal "enterprise" operated by Darby, Sullivan, and Busby who allegedly direct Gordon, Frei, and Gokceimam to commit wire fraud.  (SAC at ¶¶ 127-129).  Plaintiff contends that the predicate acts (wire fraud) were committed over a period of four months in the fall of 2009 and also August 2010, but does not plead with any particularly "who did what and when" as required by Federal of Civil Procedure 9(b).  (*Id.*).

Nevertheless, XenForo Limited cannot be the "enterprise" as alleged, because it was not formed until *June 24, 2010*, months after Plaintiff contends the defendants commenced their "racketeering" activities.  Plaintiff does not describe with *any* particularity the conduct that allegedly occurred after XenForo was formed, *i.e.* the alleged August 2010 acts, but the only "supporting" document provided by Plaintiff is an innocuous "chat log" between Darby and Freddie Bingham dated August 11, 2010 (XF 001811), in which Bingham told Darby that a vBulletin staff member was instructed to copy "bug fixes" written by users into the vBulletin source code; there is nothing that remotely constitutes fraud or misappropriation in that document.

18

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

Even if XenForo *were* an existing "enterprise," there is no allegation that any defendant had an intent to defraud Plaintiff. The "evidence" submitted by Plaintiff is "watercooler" conversations during which laughs were had at vBulletin's expense. Even if each of Plaintiff's factual allegations were true (which they are not), Plaintiff still cannot show that the defendants had a specific intent to defraud anyone over the wires. Plaintiff pleads nothing but conclusions and certainly no facts that establish the type of "organized crime" that the RICO Act is designed to remedy.

Further, even if Plaintiff could somehow demonstrate that Darby and the others had the requisite intent to commit wire fraud, it cannot show that the proposed defendants engaged in a "pattern" of racketing activity that amounts to or poses a threat of continued criminal activity. *H.J. Inc. v. N.W. Bell. Tel. Co.*, 492 U.S. 229, 239 (1989). Plaintiff's allegations, even if true, cannot constitute a pattern of racketeering activity to sustain a RICO action. *Weimer v. EMC-Chase Quality Loan Service*, 2011 WL 3809918, *3 (C.D. Cal. Aug. 26, 2011) (citing *Boyle v. United States*, 129 S.Ct. 2237, 2246 (2009).

In short, the RICO claim is nonsense and properly excluded.

> 4. *Defendants Would Be Prejudiced By The Proposed Amendment.*

Finally, Defendants would be prejudiced if Plaintiff were permitted to allege a new set of operative facts against Defendants and five new defendants. Defendants have a significant interest in the expeditious resolution of this case. The plaintiff has deep pockets and seeks to delay in the hopes of bankrupting Defendants prior to trial. A delayed trial date is likely to cripple Defendants financially even though they are likely to prevail on the merits. As a result, Plaintiff will have achieved through litigation what it is unable to achieve in the marketplace: driving a small competitor with a better product out of business.

Grace+Grace LLP
Intellectual Property
444 South Flower Street, Suite 1650
Los Angeles, CA 90071

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

1

D.      The Trial Date Should Not Be Moved.

2      The true purpose of the Motion is not to assert claims or add new parties;

3 Plaintiff is not prepared for trial on the lawsuit that it filed almost a year ago and

4 has already amended once. Plaintiff is manufacturing reasons to delay trial to

5 frustrate Defendants' efforts to clear their names.

6 **V.      CONCLUSION.**

7      Plaintiff's new claims against third parties should be filed in the countries

8 and courts having jurisdiction.  This Court is not likely to have personal or subject

9 matter jurisdiction over the individual, foreign defendants for the federal claims

10 that Plaintiff wishes to add and should decline supplemental jurisdiction over the

11 state law claims that predominate in this action and, in any event, are futile.  It also

12 is highly likely that these "new" defendants, each of whom resides abroad, will not

13 appear to defend themselves in this jurisdiction such that, as a practical matter, the

14 only claims at issue will be those now pending against Darby and XenForo.

15      The interests of justice will not be served by complicating this case and

16 delaying the trial.  Indeed, the only interest served by a delay is Plaintiff's desire to

17 harass Defendants who *are* here and who *are* defending themselves against

18 Plaintiff's baseless allegations and unnecessarily complicate a case that can and

19 should be resolved by summary judgment or at trial in November per the Court's

20 scheduling order.  The Motion should be denied.

21                                              Respectfully submitted,

22 DATED: September 12, 2011            GRACE+GRACE LLP

23                                              /s/ Pamela D. Deitchle

24                                              Pamela D. Deitchle
                                                Attorneys for Defendants XenForo Limited
25                                              and Kier Darby

26

27

28

Grace+Grace LLP
Intellectual Property
444 South Flower Street, Suite 1650
Los Angeles, CA  90071

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION