Patrick A. Fraioli (SBN 191824)
   pfraioli@ecjlaw.com
David N. Tarlow (SBN 214050)
   dtarlow@ecjlaw.com
Russell M. Selmont (SBN 252522)
   rselmont@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212-2974
Telephone (310) 273-6333
Facsimile (310) 859-2325

Attorneys for Plaintiff vBulletin Solutions, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| vBULLETIN SOLUTIONS, INC., a California corporation,<br><br>                  Plaintiff,<br><br>        v.<br><br>XENFORO LIMITED, an English private limited company; and KIER DARBY, a British citizen; and DOES 1-10, inclusive,<br><br>                  Defendants. | CASE NO. CV 10-8209-R (JEMx)<br><br>PLAINTIFF vBULLETIN SOLUTIONS, INC.'S REPLY IN SUPPORT OF MOTION FOR:<br><br>**(1) RECONSIDERATION OF ORDER DISMISSING THE SEVENTH AND EIGHTH CLAIMS OF THE FIRST AMENDED COMPLAINT WITH PREJUDICE BASED ON A CHANGE IN THE LAW; AND**<br><br>**(2) LEAVE TO FILE SECOND AMENDED COMPLAINT TO ADD NEW CLAIMS AND DEFENDANTS BASED ON NEWLY DISCOVERED EVIDENCE**<br><br>**JUDGE: Manuel L. Real**<br>**DATE:   October 3, 2011**<br>**TIME:   10:00 a.m.** |

ERVIN COHEN & JESSUP LLP

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendants' Opposition is a collection of: 1) novel theories lacking any legal support; 2) cropped quotes that change the meaning of the selected text; 3) mis-statements of fact and law; and 4) rantings intended to distract from the issues on this Motion, regarding alleged "discovery issues" that are so significant that Defendants never even brought a motion to compel their resolution.

In the process, the Opposition manages to ignore the two, central questions on this Motion: 1) Whether the recent reversal of controlling law by the Ninth Circuit requires the reinstatement of two causes of action previously dismissed by this Court in reliance on the now-reversed decisions; and 2) Whether the recent production of documents that reveal for the first time previously unknown facts justifies an amendment to the Complaint to add both new claims and the new parties who were engaged in the previously unknown conspiracy. For all their ranting about "desperation," what Defendants have utterly failed to do is to: 1) cite any authority that indicates that the two previously dismissed claims should not be immediately reinstated; or 2) demonstrate any undue delay, bad faith, or legally cognizable prejudice, as a result of either the new claims or defendants.

Instead, Defendants cry poverty, claiming that if the Court allows an amended complaint to redress the newly discovered wrongs and to reinstate the claims that are now consistent with controlling law, they will be forced to declare bankruptcy. Not only do Defendant's cries of "financial desperation" directly contradict their counsel's repeated statements to the contrary, but their pleas and wild accusations of "Plaintiff's desperation" are utterly irrelevant to any decision on this Motion.

This Motion is simply about getting the pleadings right: 1) bringing the Court's prior order, which is now contrary to controlling law, into accord with the new law in the Ninth Circuit; and 2) bringing the newly discovered claims into the case where they may be effectively and economically tried all at once with the

ERVIN COHEN & JESSUP LLP

1   claims out of which they arose and the mutual defendants who together engaged in
2   the conduct at issue. It is well-settled that this is the proper procedure in these
3   circumstances.

4   **II.    DEFENDANTS HAVE CROPPED QUOTES TO DELIBERATELY**
5   **MIS-STATE THE LAW WITH RESPECT TO RULES 15 & 16**

6       **A.    The Heightened Pleading Standard of Rule 16 Does not Apply**

7           This is a basic motion to amend the pleadings pre-trial, so the "extreme
8   liberality" of Rule 15(a) favoring such motions should apply. *Eminence Capital,*
9   *LLC v. Aspeon, Inc.*, 316 F.3d. 1048, 1051 (9th Cir. 2003); Fed. R. Civ. Pro Rule
10  15(a). Yet, Defendants have told this Court that Plaintiff's Motion should be subject
11  to the heightened standard required to amend pleadings under Rule 16 because this
12  Court has issued a pretrial scheduling order, which "may be modified only for good
13  cause and with the judge's consent." Opp., p.7; Fed. R. Civ. Pro. Rule 16(b)(4).
14  This is the worst kind of deception. Defendants attempt to hide from the Court the
15  fact that the more stringent, good cause showing under Rule 16 applies only when a
16  party seeks to amend the pleadings *after the motion cut-off date or date to amend*
17  *pleadings* in a pretrial scheduling order. *See e.g., Johnson v. Mammoth Recreations,*
18  *Inc., 975 F.2d. 604, 606 (9th Cir. 1992).* The *Johnson* case makes clear that the Rule
19  16 standard applies <u>only</u> where "the district court has issued a pretrial scheduling
20  order pursuant to Federal Rule of Civil Procedure 16 **which established a timetable**
21  **for amending pleadings."** *Johnson* at 607 (boldface added).

22          The pretrial scheduling order in this case set <u>no</u> deadline by which to file
23  motions to amend the pleadings. In fact, to the contrary, the pretrial scheduling
24  order in the instant case explicitly states **"there is no Motion cut-off date."**
25  (Docket No. 61). Thus, Rule 16 expressly does not apply.

26          Worse yet is Defendants' intentional mis-statement of the holding in
27  *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d. 946, 952 (9th Cir. 2006).
28  They represent to this Court that *AmerisourceBergen* held that Rule 16, rather than

ERVIN COHEN & JESSUP LLP

1  Rule 15, should apply in circumstances like these, when in fact, the Court stated the

2  exact opposite.  Defendants make this misrepresentation to the Court by

3  intentionally cropping the quote they select, in order to <u>reverse</u> its meaning.

4        Defendants' intentionally cropped quote states:

5           "Rule 15...is trumped by Rule 16 once the district court
         file[s] a pretrial scheduling order."

6

7  Defendants claim this is evidence that Rule 16's more stringent standards should

8  apply here. (Opp., p. 7).

9        However, when the rest of the quoted sentences cropped out by Defendants is

10  <u>restored</u>, it is plain that the Court expressly stated the <u>exact opposite</u>; namely, that,

11  Rule 15 is <u>not</u> trumped by Rule 16 in these circumstances, but rather is inapplicable:

12           "Federal Rule of Civil Procedure 16 has no effect on the
operation of Federal Rule of Civil Procedure 15(a)

13           principles in this case.  In *Johnson v. Mammoth
Recreations, Inc.*, 975 F.2d 604 (9th Cir.1992), we held

14           that Rule 15(a) did not apply, **not because Rule 15 is
trumped by Rule 16** once the district court filed a

15           pretrial scheduling order, **but rather because** the party in
*Johnson* had failed to file his motion to join additional

16           parties within the period of time set in the district court's
scheduling order. Id. at 607-08.  Put simply, the party

17           could not appeal to the liberal amendment procedures
afforded by Rule 15; his **tardy** motion had to satisfy the

18           more *stringent* "good cause" showing required under
Rule 16.  In this case, AmerisourceBergen filed its

19           motion for leave to amend within the deadline set by the
district court.  Accordingly, as the district court correctly

20           recognized, AmerisourceBergen's motion is subject to the
limited constraints placed on motions for leave to amend

21           under Rule 15(a)."

22  *AmerisourceBergen, at 952* (boldface, underline added).

23        Defendants' deliberate cropping of this quotation intentionally misstates the

24  ruling to this Court.  This violates Rule 11(b) of the Federal Rules of Civil

25  Procedure, which requires that all representations to the Court concerning legal

26  contentions are warranted by existing law and that all factual contentions have

27  evidentiary support.  Defendants were provided the Pre-Trial Schedule which states

28  that there is **no** motion cut-off in this case or date by which the pleadings must be

ERVIN COHEN & JESSUP LLP

1 amended. Thus, the heightened standard of Rule 16 is wholly inapplicable here

2 because this Motion is not in any way "tardy" and thus, like the motion in

3 *AmerisourceBergen*, "is subject to the limited constraints placed on motions for

4 leave to amend under Rule 15(a)." And, as Defendants have cited to

5 *AmerisourceBergen,* they should know that it stands for the **opposite** proposition

6 than that for which they cited it to this Court.

7   **B.**   **Even if Rule 16 Could Apply, Plaintiff Has Shown Good Cause**

8   Even assuming the heightened good cause standard of Rule 16 could apply to

9 the instant motion, Plaintiff has met that burden as a matter of fact and law. "Good

10 cause can be found where the non-moving party is already on notice of the moving

11 party's reasons for modifying the scheduling order." *Turner v. Sheriff of*

12 *Sacramento*, 2011 WL 1811028 at *5 (E.D. Cal., 2011). Here, Defendants have

13 been on notice of Plaintiff's reasons for seeking leave to amend for many months

14 because the information that gave rise to the new claims and parties was discovered

15 in documents Defendants just produced but had in their possession for years.

16   "The good cause standard focuses on the diligence of the party seeking

17 amendment." *Id.* The three key factors in evaluating diligence are: (1) whether

18 Plaintiff collaborated with the court in setting a schedule; (2) whether matters that

19 were not, and could not have been, foreseeable at the time of the scheduling

20 conference caused the need for amendment; and (3) whether Plaintiff was diligent in

21 seeking amendment once the need to amend became apparent. *Id.*

22   Plaintiff clearly satisfied the first factor, as it filed its portion of the Rule 26(f)

23 Joint Report and contributed to this Court's setting of the pre-trial schedule.

24 Furthermore, Defendants Opposition never even puts this factor at issue.

25   The second factor is satisfied because Plaintiff's amendment is based on new

26 facts just revealed for the first time during discovery, and Plaintiff did not know of

27 these facts at the time it filed its First Amended Complaint. See *Winding v. Allstate*

28 *Ins. Co.*, 2011 WL 836442 at *2 (RD. Cal. 2011) (party that learned of new facts

ERVIN COHEN & JESSUP LLP

1 through opposing sides' document production could not have previously known

2 facts forming the basis of its counterclaims and thus that party's failure to include

3 the counter-claim earlier arose from the development of matters that it could not

4 reasonably have foreseen); *See also Millenkamp v. Davisco Foods Intern., Inc,* 2011

5 WL 3796299 at *1 (9th Cir. 2011) (recognizing that if amendment is based on new

6 facts or inability to plead these facts originally, there is no lack of diligence).

7     The third factor is satisfied because Plaintiff filed this Motion only seven

8 weeks after first receiving the documents from Defendants containing the previously

9 unknown information giving rise to the new claims and identifying the new parties.

10 *See Winding* at *2 (party that sought leave to amend less than two months (eight

11 weeks) after learning new facts and prior to the discovery deadline was diligent and

12 demonstrated good cause). As a matter of fact and law, Plaintiff has diligently

13 pursued an amendment based on the new facts just disclosed by Defendants.

14     Moreover, Plaintiffs acted responsibly by not including Busby and Sullivan as

15 defendants action when it filed its FAC because it had legitimate concerns that

16 venue and jurisdiction might be improper against Busby and Sullivan at that time

17 and that they may not have had the same level of culpability as Defendants here. It

18 was not until Defendants recently produced the documents that evidence that Darby,

19 Busby and Sullivan were all conspiring with moles at VBSI to obtain unauthorized

20 access and hack into Plaintiff's California servers that it learned of this conspiracy.

21 Only then did Plaintiff have reason to assert these claims here against Sullivan and

22 Busby. Plaintiff did the right thing by not simply "suing everyone." Defendants

23 have tried to portray Plaintiff's admirable conduct as a lack of diligence.

24     Furthermore, as to the other new defendants, Gordon, Frei and Gokceimam,

25 Plaintiff could not have moved with any more haste because it did not know, and

26 had no reason to suspect, that they were conspiring with Defendants. Plaintiff was

27 required to conduct further investigations to definitively identify the new defendants

28 and assure itself of their culpability. This is not indicative of a lack of diligence.

ERVIN COHEN & JESSUP LLP

1  *See e.g. Crawford v. Delta Scientific Corp.*, 2011 WL 1584302 at *2 (C.D. Cal.

2  2011) (holding that Plaintiff who did not know identities of new parties sought to be

3  added and who acted in good faith to determine their identities was diligent).

4      Defendants make the outlandish claim that Plaintiff was not diligent in adding

5  them as defendants because it should have suspected them of treachery all along.

6  Defendants offer no authority whatsoever for this novel theory. It is undisputed here

7  that, in fact, Plaintiff had no idea that these employees were serving as moles and

8  surreptitiously conspiring with Defendants to transfer Plaintiff's proprietary files.

9  Rather, Defendants theorize, without any support, that any time one employee quits,

10  all employees should be interrogated, all access logs scrutinized and all company

11  personnel assumed to be saboteurs; and if not, plaintiff should be considered to have

12  been less than diligent. This is ridiculous. It is not surprising that Defendants could

13  not find any support for this outlandish new theory.

14      At the time Darby and Sullivan quit, Plaintiff had no reason to suspect that

15  they were conspiring with the moles they had left behind to illegally transfer

16  Plaintiff's confidential files. The fact that Darby and Sullivan did not return

17  property to Plaintiff upon their departure does not indicate that they were conspiring

18  with moles inside the company to steal its trade secrets. Nor does it even indicate

19  that Defendants must have taken confidential information with them. As alleged in

20  the FAC, later coincidences led Plaintiff to suspect foul play and the recently

21  produced documents brought the conspiracy to light. Defendants' insinuation that

22  Plaintiff should have suspected that Darby and Sullivan misappropriated trade

23  secrets when they quit does not support a finding of lack of diligence by Plaintiff.

24      The simple truth is that Plaintiff was not aware, and had no reason to suspect,

25  the various misdeeds on the part of Defendants, until Defendants produced the

26  documents recounting the conspiracy on their face. Plaintiff moved promptly to

27  notify Defendants' counsel of these actions once it learned of them, and sought leave

28  to amend from this Court as diligently as possible. Thus, even if the good cause

ERVIN COHEN & JESSUP LLP

1    requirement of Rule 16 were applicable, Plaintiff has satisfied it.

## III. PLAINTIFF HAS CORRECTLY CHARACTERIZED THE MOTION AS ONE FOR BOTH RECONSIDERATION AND LEAVE TO AMEND

Defendants offer <u>no</u> cognizable legal authority to deny that the recent change in controlling law in *Nosal* clearly supports a reconsideration of the previous order dismissing the CFAA and CPC 502 claims, and reinstatement of those claims to bring them in line with controlling law. Instead, they attempt to conflate the issues of reconsideration and leave to amend in the hope that if this Court were to deny leave to amend, they could also escape the reinstatement of what are clearly valid causes of action. This Court should not be confused or misled.

The Motion involves two distinct and separate issues: (1) the reinstatement of the CFAA and CPC 502 claims from the FAC based on the *Nosal* reversal; and (2) the desired inclusion of new claims and defendants based on the recently discovered facts contained in documents just produced by Defendants. While there is only one of each claim alleged in the pleading, there are two separate and distinct violations of each claim, dependent on the timing of the violations.

The original CFAA and CPC 502 claims were predicated on Darby *exceeding authorized access while he was employed by Plaintiff.*[1] That is why the *Nosal*

_____

[1] Defendants briefly argue that the dismissal of the CFAA and CPC 502 claims from the FAC is still correct after the *Nosal* reversal because the pleadings stated that Darby had "unfettered access" to Plaintiff's computer network. (Opp., p .6). This is simply another example of Defendants' glomming on the word "unfettered" to intentionally misinterpret and distort the allegations. Plaintiff is more than happy to dispense with the word "unfettered." Plaintiff alleged that Darby, as the lead developer of vBulletin, had clearance to access nearly all of Plaintiff's computer network, including the areas that contained the trade secret and confidential or proprietary information. This statement was made to demonstrate that Darby had the requisite access to the trade secrets such that he had the opportunity to misappropriate them. It did not relieve Darby of his obligations agreed to in the Covenant Agreement, whereby he agreed to only use Plaintiff's trade secret and confidential information in the performance of his duties for Plaintiff. Thus, simply because Darby could access all of Plaintiff's computer network if the access was in the proper scope of his duties for Plaintiff, Darby exceeded his authorized access when he accessed Plaintiffs network for the purpose
(footnote continued)

ERVIN COHEN & JESSUP LLP

1  reversal requires reinstatement of those claims – because this Court's reliance on the

2  prior version of *Nosal* held that access could not have been exceeded as a matter of

3  law. The *Nosal* reversal, on facts almost identical to ours, states the exact opposite,

4  thus making this claim, as originally stated, perfectly valid once again.

5       The new claims arising out of the newly discovered documents, on the other

6  hand, are for violations that occurred *after Defendants had quit, during which time*

7  *they had no authorization to access these computers at all*. Had these allegations

8  been present in the FAC, the Court should not have dismissed them at all. They are

9  not dependent on the reversal in *Nosal*, as are the dismissed claims for "exceeding

10  access" while employed.  These are simple "outside hacker" claims that present

11  unremarkable and unquestionable CFAA and CPC 502 violations, namely that

12  Darby and Sullivan accessed Plaintiff's servers "without authorization" and

13  "without permission" *after they stopped working for Plaintiff, and from outside the*

14  *company,* at a time when there granted "no access" to Plaintiff's computers and

15  servers.  18 U.S.C. § 1030(a)(4); Cal. Penal Code §502(c).

16       Thus, whether the Ninth Circuit reversal of *Nosal* necessitates reinstatement

17  of the previous dismissed claims, is strictly an issue of <u>reconsideration</u>. If granted,

18  those claims can be reinstated exactly as they were pleaded in the FAC. (See Docket

19  No. 21).  Independently, the Court must decide whether to grant leave to add the

20  new claims and parties based on newly discovered facts.  Since the new claims

21  include *additional* CFAA and CPC 502 violations, separate and distinct from those

22  pleaded in the FAC, Plaintiff was forced to *amend* the CFAA and CPC 502 causes

23  of action in the Proposed SAC to include the <u>new</u> facts demonstrating the violations

24  _____

25  of stealing confidential information for to use to create the competing XenForo
software.  Moreover, whatever "unfettered" access Darby and Sullivan had ceased

26  after their employment with Plaintiff terminated.  Any access by Darby and Sullivan
to Plaintiff's computers and servers after the termination of their employment was

27  unauthorized.

28

ERVIN COHEN & JESSUP LLP

1   both before and after Darby left Plaintiff's employ.[2]

2       The Opposition's complaints about "confusion" in the original Motion are

3   simply without merit. Reconsideration and leave to amend are both appropriate, and

4   appropriately requested, given the fact that both a change in law and the recent

5   discovery of new facts have occurred. Defendants' attempt to bury the

6   reconsideration of the old CFAA and CPC 502 claims by conflating them with

7   Plaintiff's discovery of additional facts that demonstrate additional violations of the

8   CFAA and CPC 502 are disingenuous and must not be entertained.

9   **IV.    DEFENDANTS' OPPOSITION GROSSLY DISTORTS THE FACTS**

10      Defendants have also inaccurately represented to the Court the status of

11  discovery and other case history. In an attempt to distract the Court from the issues

12  at hand, the Opposition claims that Plaintiff has dragged its feet, not taken any

13  depositions, ignored cut-off dates and is "desperately" seeking to "escape" the

14  November trial date. This is not only irrelevant but also wrong.

15      Defendants are well aware that the three depositions Plaintiff noticed for

16  September 13-15, 2011 in London, England -- Kier Darby, Michael Sullivan, and

17  Defendant XenForo -- all proceeded as scheduled, despite wrangling over dates, and

18  provisions of the Protective Order. They know all of Plaintiff's witnesses were

19  scheduled weeks ago, and three of the four noticed have already been deposed.

20  Defendants are aware that Plaintiff served its expert report months ago, a report

21  Defendants' expert spent over six pages analyzing and attempting to refute. And if

22  Defendants really believed Plaintiff's discovery responses were so deficient, it has

23  

24  [2] If Defendants are truly confused, Plaintiff is more than happy to have four separate causes of action in its Second Amended Complaint, rather than two. The causes of action for CFAA and CPC 502 violations *before* Darby left will be exactly

25  as pleaded in the FAC and the causes of action based on facts that occurred *after* Darby stopped working for Plaintiff can be unique, new causes of action. Moreover,

26  if the Court wants to consider Plaintiff's Motion as two separate motions, one for reconsideration and one for leave to amend, it may do so sua sponte. Defendants are

27  simply arguing form over substance.

28  

ERVIN COHEN & JESSUP LLP

1   had months to file a motion to compel, yet none has been filed.

2       Defendants' statements regarding Lynn Tokeshi's deposition testimony are

3   another red herring.  Ms. Tokeshi would have no way of knowing what documents,

4   software or hardware Darby may have taken with him, and was not his supervisor.

5   As she testified, there is nothing unusual about her request that Darby return

6   property belonging to Plaintiff; it is common when employees depart and as the

7   human Resources Manager, she does not physically go to their desks and box up

8   property.  The recently discovered documents make clear that Darby did, in fact,

9   possess material of the type Ms. Tokeshi requested, and his contract required, to be

10   returned to Plaintiff.  Darby's failure to return these documents and information was

11   in fact a violation of his Employment Agreement.  This has no bearing on his

12   subsequent hacking into the servers of Plaintiff and downloading numerous

13   proprietary files such as customer databases, sales records and "alpha" versions of

14   not-yet released versions of the vBulletin software.

**V.**     **PLAINTIFF'S PROPOSED NEW CLAIMS ARE NOT FUTILE**

16       Defendants misstate and misapply the applicable standard to determine that a

17   proposed amendment is futile.  "[A] proposed amendment is futile **only if no set of**

18   **facts can be proved** under the amendment…that would constitute a valid…claim."

19   *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (emphasis added).

20   Denial of a motion for leave to amend as futile, where questions of fact exist that if

21   proven would constitute a valid claim, is an abuse of discretion.  *Id.*

22       Worse, Defendants then attempt to apply this standard to the first six existing

23   claims of the operative Complaint. These claims are almost ready for trial, and with

24   the exception of adding additional defendants, Plaintiff has not sought to

25   substantively amend them in any way by this motion. Thus, their "validity" or

26   "futility" should in no way be seriously questioned on this Motion.  This is, in

27   effect, another clever but disingenuous tactic by Defendants; they are attempting to

28   file a Motion to Dismiss on these six claims even though the time has passed and

ERVIN COHEN & JESSUP LLP

1  their prior Motion to Dismiss these claims was denied many months ago. (Docket

2  No. 15, Notice of Motion and Motion to Dismiss for Lack of Jurisdiction ("MTD")).

3  They even resurrect many of the same arguments of which they previously failed to

4  convince the Court.  (Compare MTD, pp. 4-7 with Opp., pp. 11, 12 and 13).

5       Next, again confusing the issues to try to confuse the Court, Defendants argue

6  "futility" for Claims Seven and Eight (the previously dismissed claims to be

7  reinstated based on a change in the law only, and not any amendment of any kind).

8       Finally, as to the five new claims, where a futility inquiry may be legitimate

9  (although misapplied here), Defendants' arguments blatantly ignore the facts just

10 revealed by Defendants' own documents. Since they cannot dispute that these facts

11 were just discovered, instead they argue that Plaintiff's claims will fail on a

12 subsequent motion to dismiss or for summary judgment.  Of course, that is pure

13 speculation, since there has been no discovery or litigation of these new claims (and

14 defendants).  The Proposed Complaint alleges facts which, if proven, constitute

15 valid claims for each of Plaintiff's newly asserted claims and defendants.

16 Defendant's unsupported theories do not establish anything close to "futility."

17      The Court need not even consider Defendants' improper "futility" theories

18 with respect to the first six causes of action, as they are not even part of the

19 proposed amendment or reconsideration, and thus are not even before this Court on

20 this Motion.  However, since Plaintiff cannot afford to ignore Defendants' theories,

21 no matter how improper, it demonstrates below that even if these arguments were

22 considered "on the merits."  Defendants' arguments in fact have no merit.

23            1.   **The Copyright Claim**

24      Plaintiff will prove up facts at trial which establish its claim for copyright

25 infringement.  Plaintiff has learned from Defendants' own words memorialized in

26 Internet Chat Logs that Defendants accessed Plaintiff's computers and servers

27 without authorization in order to view Plaintiff's protected source code.

28 Defendants' only contention is that Plaintiff has shown no direct infringement.  This

ERVIN COHEN & JESSUP LLP

1 is irrelevant because caselaw makes clear that non-literal infringement is also

2 actionable. Protection under the Copyright Act extends to both "literal" and "non-

3 literal" components of computer software. *Johnson Controls, Inc. v. Phoenix*

4 *Control Sys., Inc.*, 886 F.2d 1173, 1175 (9th Cir. 1989). Literal components include

5 source codes and object codes and non-literal components include the software's

6 architecture, structure, sequence, organization, operational modules and user-

7 interface. *Id.*; *Computer Access Technology Corp. v. Catalyst Enterprises, Inc.*,

8 2001 WL 34118030 at *13 (N.D. Cal. 2001).

9      Defendants argue that "nothing in XenForo software is copied from or is

10 substantially similar to expression protected by Plaintiff's copyright registrations."

11 (Opp., p. 10) Defendants are intentionally conflating functionality with non-literal

12 infringement. Plaintiff contends that the architecture and structure of the code,

13 rather than what the code actually codes for, is the same. This allegation regarding

14 architecture/syntax/structure is sufficient for non-literal infringement. This is a

15 question of fact, and no evidence has been produced to prove it one way or the

16 other. *Walt Disney Productions v. Filmation Associates*, 628 F. Supp. 871, 874

17 (C.D. Cal 1986). That is what the trial is for, and why Defendants did not file a

18 Motion to Dismiss or Motion for Summary Judgment on this point.

19               2.   **The Declaratory Relief Claim**

20      Defendants cite to no authority in support of their argument that no relief is

21 available or that this claim is futile. Plaintiff alleges that Defendants Darby and

22 Sullivan developed aspects of the XenForo software while employed by Plaintiff

23 and seeks a declaration that it is the proper owner of the XenForo software. The

24 Court "may declare the rights and other legal relations of any interested party

25 seeking such declaration, whether or not further relief is or could be sought. Any

26 such declaration shall have the force and effect of a final judgment or decree and

27 shall be reviewable as such." 28 U.S.C. § 2201. The Court has the authority to

28 declare that Plaintiff is the rightful owner of the XenForo software, and to issue a

ERVIN COHEN & JESSUP LLP

1   variety of remedies, in its discretion, and tailored to the circumstances.

2   *Marchwinski v. Oliver Tyrone Corp.*, 461 F. Supp. 160, 173 (D.C. Pa. 1978) (federal

3   courts have broad discretion in fashioning declaratory relief where it is appropriate).

4   Because an actual controversy exists between Plaintiff and Defendants, which

5   Defendants have not produced any evidence to contest, this Court has the authority

6   to grant the requested declaratory relief and thus the claim is not "futile".

7                 3.     **The Misappropriation of Trade Secrets Claim**

8       This Court has already ruled, in denying Defendants' Motion to Dismiss or

9   Transfer, that Defendants are subject to personal jurisdiction in California. This

10   argument is an entirely improper attempt to get a "second bite at the apple." It may

11   be dismissed out of hand as a disguised, improper attempt at reconsideration.

12   However, in an abundance of caution, even this theory must be rebutted, so Plaintiff

13   does so below, and apologizes for wasting the Court's time.

14       A three-prong test is employed to determine whether a party has sufficient

15   minimum contacts to be susceptible to specific personal jurisdiction: (1) the non-

16   resident defendant must purposefully direct his activities or consummate some

17   transaction with the forum or resident thereof or perform some act by which he

18   purposefully avails himself of the privilege of conducting activities in the forum,

19   thereby invoking the benefits and protections of its laws; (2) the claim must be one

20   which arises out of or relates to the defendant's forum-related activities; and (3) the

21   exercise of jurisdiction must comport with fair play and substantial justice.

22   *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

23       There is no doubt that Plaintiff's claims at issue arose out of activities that

24   took place in this forum, <u>as this Court has already held</u>. Defendants fail to

25   acknowledge that "[a]cquisition of a trade secret of another by a person who knows

26   or has reason to know that the trade secret was acquired by improper means" is the

27   very first instance of trade secret misappropriation defined under California Civil

28   Code Section 3426.1. Defendants hacked into, or otherwise accessed without

13379.16:1270485.1

13

ERVIN COHEN & JESSUP LLP

**ERVIN COHEN & JESSUP** LLP

1   authorization, Plaintiff's servers and computers in California. If Plaintiff's

2   computers and servers in California had been a bank and Defendants had broken

3   into this bank to steal Plaintiff's property, there would be no question that

4   jurisdiction would be proper in California. In evaluating whether a claim asserted in

5   the litigation "arises out of forum-related activities," a court determines if the

6   plaintiff "would not have been injured 'but for' the defendant's ... conduct directed

7   toward" the plaintiff in that forum. *Panavision Int'l, L.P. v. Toeppen,* (9th Cir.1998)

8   141 F.3d 1316, 1322. Here, Plaintiff would not have been injured but for Darby's

9   conduct directed toward it in California vis-à-vis the stealing and misappropriating

10  of trade secrets (that were developed and guarded in this forum) from this forum.

11      In *Language Line Services, Inc. v. Language Services Assoc., LLC* (2010

12  N.D. Cal.) 2010 WL 5115671 at * 4, the Court held that where defendant entered

13  into an employment agreement with a Plaintiff corporation headquartered in the

14  district, was entrusted with Plaintiff's trade secrets, misappropriated the trade secret

15  information that was developed in California, from California, and used that trade

16  secret information for the purpose of competing with that California corporation and

17  stealing its California customers, the Plaintiff conclusively met the burden of

18  establishing the claims arose out of forum related activities. *See also Mancor*

19  *Medical Management Co. v. VHA Midwest, Inc.* 991 F.2d. 803 (9th Cir. 1993)

20  (Misappropriating and disclosing trade secrets learned of while traveling to

21  California to deal with a California company's operations constitutes a claim arising

22  out of those activities in California). There can similarly be no question that, here,

23  Defendants purposely directed activities toward California, as Defendants knew

24  Plaintiff, who Defendants targeted and misappropriated trade secrets and infringed

25  copyrighted information from to compete in this forum, is a resident of this forum.

26  *Brayton Purcell LLP v. Recordon & Recordon,* 606 F.3d 1124, 1129 (9th Cir. 2010).

27      This court evaluates purposeful direction using the three-part " *Calder-*

28  effects" test, taken from the Supreme Court's decision in *Calder v. Jones,* 465 U.S.

---

13379.16:1270485.1

1  783 (1984). *See Schwarzenegger,* 374 F.3d at 803. Under this test, "the defendant
2  allegedly must have (1) committed an intentional act, (2) expressly aimed at the
3  forum state, (3) causing harm that the defendant knows is likely to be suffered in the
4  forum state." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,* 433
5  F.3d 1199, 1206 (9th Cir.2006) (en banc) (internal quotation marks omitted). There
6  is no requirement that the defendant have any physical contacts with the forum. *See*
7  *Schwarzenegger,* 374 F.3d at 803.

8      *Language Services* is again instructive, as defendant in that case committed
9  the intentional act of misappropriating the trade secret in California, expressly aimed
10 their conduct at the California forum because that was where Plaintiff resided,
11 caused Plaintiff harm in the forum because defendant used the trade secrets to steal
12 California clients from a California corporation and the defendant was on notice that
13 harm would be felt in the forum because Defendant was a former employee and
14 knew Plaintiff was headquartered there. *Id.* at * 3. The facts here are almost
15 identical. *See also Bryant v. Mattel, Inc.* 2010 WL 3705668 (C.D. Cal. 2010)
16 (directing employee to steal trade secrets from California corporation residing in this
17 forum showed that defendant (1) committed an intentional act, (2) expressly aimed
18 at the forum state, (3) causing harm that the defendant knows is likely to be suffered
19 in the forum state, and thus met the test for purposeful availment or direction).

20     Finally, in no way does exercising personal jurisdiction over Defendants in
21 the same forum where they actively misappropriated and stole Plaintiff's trade
22 secrets offend any notion of fair play or justice. There is a presumption of
23 reasonableness where the Defendants purposefully directed their activities at foreign
24 residents, as is the case here. *Haisten v. Grass Valley Medical Reimbursement*
25 *Fund,* (9th Cir.1986) 784 F.2d 1392, 1397. Moreover, Defendants who come to
26 California and engage in illegal business practices should expect to be held
27 accountable in California. *Epic,* (2009) 179 Cal. App. 4th 314, 329; *Language*
28 *Services* (N.D. Cal. 2010) 2010 WL 5115671 at *5. Additionally, California has a

ERVIN COHEN & JESSUP LLP

1   strong interest in adjudicating a dispute involving misappropriation of the trade

2   secrets of a California-based corporation. *See Sinatra v. National Enquirer, Inc.*,

3   (9th Cir.1988) 854 F.2d 1191, 1200 ("California maintains a strong interest in

4   providing an effective means of redress for its residents [who are] tortiously

5   injured"). Therefore, justice and fair play require that Darby, Sullivan and the other

6   Defendants be held accountable for their actions in this district.

7       Defendants attempt to spin the law to make it sound like misuse or disclosure

8   of Plaintiff's trade secrets is the alleged violation here and that if such unlawful

9   activity occurred, it occurred outside of California. Defendants are wrong.

10  Plaintiff's misappropriation of trade secrets claim arises at the time of each

11  misappropriation. *Cadence Design Systems, Inc. v. Avant! Corp.*, 29 Cal. 4th 215,

12  224 (2002). *FAS Technologies, Ltd. v. Dainippon Screen Mfg. Co., Ltd.*, 2001 WL

13  637451, *2 (N.D. Cal. 2001) and *North Alaska Salmon Co. v. Pillsbury Council,*

14  *Inc.* provide no support for Defendants arguments here as both involved conduct

15  that occurred entirely outside of California. Darby's challenge to personal

16  jurisdiction in this forum has already failed based on his activities directed at

17  California. Defendants now admit to hacking into Plaintiff's servers in California.

18  Thus, the Defendants Plaintiff now seeks to add have subjected themselves to

19  personal jurisdiction in this forum.

20          4.    **The Tortious Interference Claim**

21      Plaintiff alleges that Defendants engaged in unlawful activity directed at

22  California. Defendants Gordon, Frei, and Gokceimam breached their Covenant

23  Agreements with Plaintiff by providing Plaintiff's trade secret materials to Co-

24  Defendants Darby, Sullivan, Busby and XenForo and helping them gain

25  unauthorized access to Plaintiff's computers and servers in California. Defendants

26  knew their actions would affect Plaintiff in California. California law applies to

27  unlawful acts such as those alleged under this claim, which occurred in or were

28  directed at California. *See Calder v. Jones,* 465 U.S. 783 (1984); *Yahoo! Inc. v. La*

ERVIN COHEN & JESSUP LLP

1 | *Ligue Contre Le Racisme Et L'Antisemitisme,* 433 F.3d 1199, 1206 (9th Cir.2006);

2 | *Schwarzenegger* at 802.  The Court has already denied Defendant Darby's attempt

3 | to dispute personal jurisdiction; it should not allow the same losing arguments here

4 | on behalf of Defendants who are not yet parties.

5 |       5.   **The Breach of Contract and Duty of Loyalty Claims**

6 |     It is indisputable that Defendants owed a duty of loyalty to use the

7 | "information peculiar to his employer's business and acquired therein" to improve

8 | vBulletin and not "in direct competition with the employer's business." *Bancroft-*

9 | *Whitney Co. v. Glen*, 64 Cal. 2d 327, 346 (1966).   All employees owe a duty of

10 | loyalty to their employers.  *Otsuka v. Polo Ralph Lauren Corp.*, 2007 WL 3342721

11 | at *3.  Defendants Darby and Sullivan simply state, without citation to any

12 | authority, that they were never employed by Plaintiff and thus had no relationship

13 | that would establish a duty of loyalty.  Whether one is an employer of another is

14 | always a question of fact, for the trier of fact.  *National Campaign Committee v.*

15 | *Rogan*, 69 F. Supp. 679, 686-87 (D.C. Cal. 1945).

16 |     Even more egregious, Defendants cite only to *Pierce v. Lyman*, which

17 | discusses the attorney-client relationship and fiduciary obligations that arise from

18 | such a relationship.  *Pierce v. Lyman,* 1 Cal. App. 4th 1093, 1102 (1991).  This case

19 | is inapplicable because Plaintiff does not allege an attorney-client relationship, and

20 | is factually inapposite as well.

21 |     Finally, Defendants once again resort to an intentionally cropped quote to

22 | deliberately misstate the holding in *Huong Que, Inc. v. Luu*.  Defendants quote the

23 | case as saying employees may make "preparations to compete" before leaving.

24 | (Opp., p. 12)  However, the actual quotation is to the contrary: the Court stated that

25 | "[w]hile California law does permit an employee to seek other employment and

26 | even to make some 'preparations to compete' before resigning, California law does

27 | not authorize an employee to transfer his loyalty to a competitor." *Huong Que, Inc.*

28 | *v. Luu*, 150 Cal. App. 4th 400, 414 (2007) (quoting *Fowler v. Varian Assocs., Inc.*,

ERVIN COHEN & JESSUP LLP

1  196 Cal. App. 3d 34, 41(1988)). This is exactly what Plaintiff alleges happened

2  here, and Defendants' cropping of the quote once again **reverses** the meaning of the

3  quote it urges on this Court.

4      The duty of loyalty is breached, and the breach "may give rise to a cause of

5  action in the employer, when the employee takes action which is inimical to the best

6  interests of the employer." *Id.* (quoting *Stokes v. Dole Nut Co.*, 41 Cal. App. 4th

7  285, 295 (1995)). The court in *Bancroft-Whitney Co. v. Glen* recognized that "[n]o

8  ironclad rules as to the type of conduct which is permissible can be stated, since the

9  spectrum of activities in this regard is as broad as the ingenuity of man itself."

10 *Bancroft-Whitney Co. v. Glen*, 64 Cal. 2d 4th 327, 346 (1966). Plaintiff's duty of

11 loyalty claim is not premised solely on any one agreement not to compete, nor

12 solely on Plaintiff's misappropriation of trade secret claim.

13      In addition, it is not made moot simply because the employment agreements

14 were <u>initially</u> entered into outside of California. In June 2007, VBSI's sister

15 corporation, IB Services Limited, a UK company, purchased all the shares in Jelsoft

16 Enterprises Limited, the original developer of vBulletin and Darby and Sullivan's

17 employer, and assumed the management and operations of Jelsoft. (SAC ¶ 8).

18 After the acquisition, the operations and management of Jelsoft were transferred to

19 Internet Brands' headquarters in El Segundo, California. *Id.* Darby and Sullivan,

20 thereafter, were employed by a California company and on multiple occasions

21 Darby traveled to California to meet with other team members working on the

22 vBulletin software. Moreover, as this Court has already found, the activities that

23 constituted the breach were directed at and occurred in California.

24      Defendants' argument that arbitration clauses contained in Defendants

25 Gordon, Frei, and Gokceimam's 2010 independent contractor agreements make

26 these claims against them moot, and thus justify denying Plaintiff's motion to

27 amend, is both wrong and not before this Court. Arbitration clauses simply give

28 those Defendants the option to move the court to compel arbitration of the claims

ERVIN COHEN & JESSUP LLP

18

1 governed by these agreements once they have been sued, which can happen only if

2 the motion is granted. Those parties may choose to litigate in this forum, or the

3 Court may send all of the claims to arbitration, but none of that is before the Court

4 until the amendment is granted and the new defendants appear.

6.    **The Violation of the Computer Fraud and Abuse Act Claim.**

6 Plaintiff recently discovered from Skype chat logs produced by Defendants

7 that they (1) knowingly and with intent to defraud (2) accessed Plaintiff's protected

8 computers and servers, (3) without authorization or by exceeding such authorization

9 as was granted, and (4) as a result have furthered the intended fraud and obtained

10 Plaintiff's valuable intellectual property. 18 U.S.C. § 1030(a)(4). Plaintiff alleges

11 that Defendants furthered the intended fraud by viewing, copying and using

12 Plaintiff's protected information. Defendants cite to no legal authority for their

13 contention that this claim is futile, nor could they. No doubt facts exist based on

14 Defendants' own admissions that will constitute a valid claim for violation of the

15 Computer Fraud and Abuse Act ("CFAA") against them.

16 In addition, Plaintiff has pleaded both loss and damage. "Loss" is defined by

17 the statute as "any reasonable cost to any victim, including the cost of responding to

18 an offense, conducting a damage assessment, and restoring the data, program,

19 system, or information to its condition prior to the offense, and any revenue lost,

20 cost incurred, or other consequential damages incurred because of interruption of

21 service." 18 U.S.C. § 1030(e)(11). Paragraph 88 states "Defendants' conduct has

22 caused losses to VBSI in excess of $5,000, and believed to be well in excess of

23 $12,000,000." (SAC ¶ 20) While Defendants prefer that Plaintiff call it a "loss"

24 rather than say that Plaintiff suffered losses, Defendants' attack on Plaintiff's choice

25 of words is irrelevant when determining futility.

26 The statute only requires that Plaintiff plead loss or damage, but Plaintiff

27 pleaded both. "Damage" is defined as "any impairment to the integrity or

28 availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8).

ERVIN COHEN & JESSUP LLP

The Ninth Circuit has held that an intrusion of Plaintiff's computers and servers constitutes an impairment. *Creative Computing v. Getloaded.com LLC*, 386 F.3d 930, 933-36 (9th Cir. 2004). Defendants parse Plaintiff's choice of words. This does nothing to indicate Plaintiff's CFAA claim is "futile."

### 7. **Plaintiff's CPC 502 Claim**

Facts exist which constitute a valid claim under California Penal Code Section 502 based on Defendants' unauthorized access of Plaintiff's computers and servers. Plaintiff alleges that Defendants took, copied, and made use of data from Plaintiff's computers and servers to develop XenForo software in violation of Section 502(c)(2). Under Section 502(e)(1) Plaintiff may recover "compensatory damages [that] shall include any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access." This is different than suffering damaged, lost, or deleted data. Defendants argue that Plaintiff has failed to allege that it suffered any "damage or loss." (Opp., p.15) Defendants are wrong. Plaintiff alleges losses in excess of $10,000. (SAC ¶ 93)

Defendants argue that Plaintiff failed to allege "injury" as defined by the code and required under Section 502(h)(2). This is a red herring. Plaintiff does not base its claim on a violation of Section 502(c)(3). Injury under Section 502 only comes into play when the Court is determining a fine or imprisonment pursuant to Section 502(d). It is irrelevant to Plaintiff's valid claim.

### 8. **The Unfair Business Practices Cause of Action**

Plaintiff's Unfair Business Practices claim is premised on Defendants' unlawful acts, including inducing Plaintiff's employees to breach their Covenant Agreements, interfering with Plaintiff's customer relationships, and unauthorized access of Plaintiff's computers and servers in order to view, copy, and use Plaintiff's intellectual property, revealed in detail in recently produced Skype chat logs. Plaintiff pleaded valid claims for intentional interference with prospective economic

ERVIN COHEN & JESSUP LLP

1  advantage and tortious interference with contractual relations, both of which support

2  a claim for violation of Business and Professions Code section 17200. *CRST Van*

3  *Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1112 (9th Cir. 2007).

4  Further, Plaintiff pleaded facts which constitute a valid claim under Cal. Pen. Code

5  Section 502, a sufficient predicate for an unfair competition claim under Section

6  17200. *TMX Funding, Inc. v. Impero Technologies, Inc.*, 2010 WL 2509979, at *7.

7    While Defendants' are correct that the Uniform Trade Secrets Act preempts

8  common law claims based on the same nucleus of facts as the misappropriation of

9  trade secrets claim for relief, *K.C. Multimedia, Inc.*, 171 Cal. App. 4th 939, 962

10  (2009), to the extent the claim is based on disputed trade secrets, it may continue

11  until it is established that the disclosures on which Plaintiff bases the claim were

12  trade secrets. *TMX Funding, Inc. v. Impero Technologies, Inc.*, 2010 WL 2509979,

13  at *4-5. Defendants also dispute what constitutes Plaintiff's copyright protected

14  material. Unless Defendants stipulate the copyrights are valid. Plaintiff's unfair

15  competition claim should be allowed to proceed until it is established that copyright

16  law preempts it. To the extent Plaintiff's Unfair Business Practices claim is not

17  based on the same nucleus of facts as the trade secret or copyright claim and is

18  instead based on Defendants' interference with Plaintiff's customer relations and

19  employee Covenant Agreements, Defendants are wrong, it is not preempted.

20    9.    **The Conversion Cause of Action**

21    Contrary to Defendants' assertion, Plaintiff's conversion claim is consistent

22  with Ninth Circuit authority recognizing a tort for conversion of intangible property.

23  In order to determine whether an intangible property right exists, the Ninth Circuit

24  applies a three part test: (1) there must be an interest capable of precise definition;

25  (2) it must be capable of exclusive possession or control; and (3) the putative owner

26  must have established a legitimate claim to exclusivity. *See Kremen v. Cohen*, 337

27  F.3d 1024, 1030 (9th Cir. 2003). In *Kremen*, the Ninth Circuit found that the

28  plaintiff had an intangible property right in a domain name and therefore could

ERVIN COHEN & JESSUP LLP

1   claim that it was converted. *Id.* Applying this standard, it is clear that Plaintiff has

2   alleged sufficient facts for establishing a right to intangible property that forms the

3   basis of a conversion claim. First, like the domain name in *Kremen*, the information

4   allegedly converted is a well-defined interest. Plaintiff's source code and customer

5   lists are not amorphous. They are distinct groupings of proprietary information. *See,*

6   *generally, G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Service, Inc.*, 958 F.2d

7   896, 903 (9th Cir.1992). Second, Plaintiff's source code and customer lists were

8   subject to exclusive control. Ownership is exclusive in that Plaintiff controlled

9   access to the information, only shared the information when it was in its economic

10  interest, and required others to sign confidentiality agreements. Third, Plaintiff has

11  established a legitimate claim to exclusivity because it invested a substantial amount

12  of time, effort and resources in compiling the information, marketing it, and keeping

13  it private. Under *Kremen* therefore, Plaintiff had an intangible property right in its

14  source code and customer lists. *Kremen* at 1030.

15          Plaintiff alleges that its exclusive ownership of this intangible property was

16  violated by Defendants when they accessed Plaintiff's computers and servers

17  without authorization and took the Plaintiff's intangible property without

18  permission. Defendants deprived Plaintiff of the exclusive control of the property,

19  exercised control of the property, provided it to others and used it for their own gain.

20  In addition, Defendants refused to return the property when Plaintiff demanded it,

21  thus establishing a conversion claim under *Kremen*.

22          Defendants' assertion that this claim is preempted by Plaintiff's trade secret

23  and copyright claims is wrong. Plaintiff's copyright claim alleges that Defendants

24  took Plaintiff's copyright protected works and infringed one of Plaintiff's exclusive

25  rights by reproducing, creating derivative works from, and distributing Plaintiff's

26  copyrighted works. Plaintiff's trade secret claim alleges that Defendants improperly

27  acquired Plaintiff's protected trade secrets by hacking into or otherwise accessing

28  Plaintiff's computers and servers without authorization in order to view, copy and

ERVIN COHEN & JESSUP LLP

1  use this protected information. The copyright and trade secret claims require

2  separate and distinct elements from Plaintiff's conversion claim which alleges that

3  Defendants deprived Plaintiff of the exclusive control of its intangible property and

4  refused to return it upon Defendants' demand.

5  　　　　　　　　10.　**The Conspiracy Claim.**

6  　　　　Plaintiff's conspiracy claim relies on other properly pleaded causes of action.

7  It is not a separate and distinct cause of action, but under California law, is

8  procedurally set out in the complaint as its own cause of action. Defendants are

9  correct that civil conspiracy is a "legal doctrine that imposes liability on persons

10  who, although not actually committing a tort themselves, share with the immediate

11  tortfeasors common plan or design in its preparation." *Kidron v. Movie Acquisition*

12  *Corp.*, 40 Cal. App. 4th 1571, 1581 (1995). Defendants worked together under a

13  common plan to intentionally harm Plaintiff by accessing Plaintiff's computers and

14  servers without authorization and viewing, copying and using Plaintiff's protected

15  trade secrets to form XenForo and develop XenForo software. Defendants provide

16  no support for their naked assertion that "[a]s a matter of law, Plaintiff cannot have

17  it both ways." (Opp., p. 17). No such authority exists.

18  　　　　　　　　11.　**The Civil RICO Claim**

19  　　　　Plaintiff's allegations are based on facts recently discovered from what

20  Defendants call an "innocuous chat log" (Opposition p. 18) which captured

21  Defendants' discussions regarding their unlawful acts. A valid claim under the

22  Racketeer Influenced and Corrupt Organizations Act ("RICO") requires facts which

23  establish (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering

24  activity (5) causing injury to Plaintiff's business or property. *Living Designs, Inc. v.*

25  *E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005). Plaintiff

26  identifies XenForo as the "enterprise" limited, of course, by its existence.

27  Defendants acknowledge that XenForo was formed in June 2010, thus, it existed in

28  August of 2010 when some of the alleged unlawful activity occurred. (Opp., p. 18)

ERVIN COHEN & JESSUP LLP

1   Plaintiff alleges that Defendants committed wire fraud (racketeering activity)

2   by falsely representing to Plaintiff that they were Gordon, Frei, Gokceimam, Machol

3   or Bingham using those individual's online identification usernames, passwords,

4   and other credentials required to verify access to Plaintiff's servers and computers

5   during the fall of 2009 and August of 2010. All of these facts were discovered by

6   Plaintiff after reviewing recently produced chat logs memorializing conversations

7   between the Defendants. During these online chats, Defendants exchanged false

8   login information in violation of company policy and applicable laws.

9   Defendants argue that Plaintiff cannot establish a pattern under *H.J. Inc. v.*

10  *N.W. Bell. Tel. Co.*, 492 U.S. 229 (1989), but this case makes clear that "Congress

11  indeed had a fairly flexible concept of a pattern in mind." This pattern can be

12  shown by continuity plus a relationship between the predicate acts. Defendants

13  admit in their online conversations to multiple instances of unauthorized access

14  using false login information. These multiple acts establish a pattern of conduct

15  which satisfies the requirements under RICO.

16  Defendants now attempt to minimize the severity of these acts in the face of

17  very serious allegations. Plaintiff does not share in Defendants' amusement over

18  these "watercooler conversations" (Opp., p. 19). Plaintiff contends that Defendants

19  own words establish their intent to commit wire fraud by gaining access to

20  Plaintiff's computers and servers without authorization. Defendants argue that these

21  facts would not "establish the type of organized crime that the RICO Act is designed

22  to remedy." (Opp., p. 19) Defendants are wrong.

23  **VI.   CONCLUSION**

24  Defendants' futility arguments are meritless because they merely point out

25  imperfections in the Proposed Second Amended Complaint rather than prove that no

26  set of facts could be pleaded and proven. If the Court believes that the minor

27  imperfections in the Proposed Second Amended Complaint claimed by Defendants

28  will yield wasteful motions to dismiss or motions for leave to amend by Plaintiff,

ERVIN COHEN & JESSUP LLP

1   Plaintiff requests leave to file a Second Amended Complaint that is not identical to

2   the Proposed Second Amended Complaint attached to the moving papers that

3   remedies any deficiencies addressed by Defendants that the Court would like

4   addressed.

5        Defendants claim in their papers that "a delayed trial date is likely to cripple

6   Defendants financially."[3] (Opp., p. 19). If Defendants truly are in financial peril,

7   they should support this Court's granting leave to amend. Granting leave will

8   promote judicial economy and allow Defendants to litigate all the claims in the

9   instant matter which is less costly than fighting two actions in this Court

10   simultaneously. Truly, both the Court's and Defendants' resources would be

11   maximized by having all the claims proceed in this action. Therefore, Plaintiff

12   respectfully requests that this Court grant the instant Motion, reinstate Plaintiff's

13   Seventh and Eighth claims from the First Amended Complaint and grant Plaintiff

14   leave to file a Second Amended Complaint.

15

16   DATED: September 19, 2011       ERVIN COHEN & JESSUP LLP

17                           Patrick A. Fraioli

                            David N. Tarlow

18                           Russell M. Selmont

19

20

21                      By:      /s/

22                           Patrick A. Fraioli

                            Attorneys for vBULLETIN SOLUTIONS,

23                           INC.

24

25

26     [3] Plaintiff questions the veracity of this statement, as Defendants' counsel Michael Grace stated during a recent meet and confer conversation that Defendants

27   have an *unlimited budget* and are capable and prepared to see the case all the way through.

28

PLAINTIFF vBULLETIN SOLUTIONS, INC.'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION

ERVIN COHEN & JESSUP LLP

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.   DEFENDANTS HAVE CROPPED QUOTES TO DELIBERATELY
      MISTATE THE LAW WITH RESPECT TO RULES 15 & 16 ...................................2

      A.    The Heightened Pleading Standard of Rule 16 Does not Apply ............................2

      B.    Even if the Rule 16 Standard Somehow Did Apply, Plaintiff Has Shown
            Good Cause......... .................................................................................4

III.  PLAINTIFF HAS CORRECTLY CHARACTERIZED THE MOTION AS
      ONE FOR BOTH RECONSIDERATION AND LEAVE TO AMEND ........................7

IV.   DEFENDANTS' OPPOSITION GROSSLY DISTORTS THE FACTS.......................9

V.    PLAINTIFF'S PROPOSED NEW CLAIMS ARE NOT FUTILE...............................10

VI.   CONCLUSION ....................................................................................................24

ERVIN COHEN & JESSUP LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

13379.16:1271008.1                                          i

**TABLE OF AUTHORITIES**

**Page**

**CASES**

AmerisourceBergen Corp. v. Dialysis West, Inc., 465 F.3d. 946, 952 (9th Cir.) ........................... 2,4

Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327, 346 (1966). ...................................................... 17,18

Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1129 (9th Cir. 2010). .................. 14

Bryant v. Mattel, Inc. 2010 WL 3705668 (C.D. Cal. 2010) ........................................................... 15

Cadence Design Systems, Inc. v. Avant! Corp., 29 Cal. 4th 215, 224 (2002). ................................ 16

Calder v. Jones, 465 U.S. 783 (1984). ........................................................................................ 14,15

Computer Access Technology Corp. v. Catalyst Enterprises, Inc. 2001 WL 34118030 at *13 (N.D. Cal. 2001) ..................................................................................................... 12

CRST Van Expedited, Inc. v. Werner Enterprises, Inc., 479 F.3d 1099, 1112 (9th Cir. 2007). ............................................................................................................................... 21

Crawford v. Delta Scientific Corp., 2011 WL 1584302 at *2 (C.D. Cal. 2011) ........................... 6

Creative Computing v. Getloaded.com LLC, 386 F.3d 930, 933-36 (9th Cir. 2004). ..................... 20

Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d. 1048, 1051 (9th Cir. 2003) ............................. 2

Epic, (2009) 179 Cal. App. 4th 314329. ...................................................................................... 17

FAS Technologies, Ltd. v. Dainippon Screen Mfg. Co., Ltd., 2001 WL 637451, *2 (N.D. Cal. 2001). ....................................................................................................................... 18

Fowler v. Varian Assocs., Inc., 196 Cal. App. 3d 34, 41 (1988). ................................................ 20

G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Service, Inc., 958 F.2d 896, 903 (9th Cir. 1992). ............................................................................................................................. 24

H.J. Inc. v. N.W. Bell, Tel. Co., 492 U.S. 229 (1989). .............................................................. 26

Haisten v. Grass Valley Medical Reimbursement Fund, (9th Cir. 1986) 784 F.2d 1392, 1397 ................................................................................................................................ 17

Huong Que, Inc. v. Luu, 150 Cal. App. 4th 400, 414 (2007). ..................................................... 19

Johnson Controls, Inc. v. Phoenix Control Sys., Inc., 886 F.2d 1173, 1175 (9th Cir. 1989). .......... 13

Johnson v. Mammoth Recreations, Inc., 975 F.2d. 604, 606 (9th Cir. 1992). ............................... 2,3

K.C. Multimedia, Inc., 171 Cal. App. 4th 939, 962 (2009). ....................................................... 23

Kidron v. Movie Acquisition Corp., 40 Cal. App. 4th 1571, 1581 (1995). ................................... 25

ERVIN COHEN & JESSUP LLP

Kremen v. Cohen, 337 F.3d 1024, 1030 (9th Cir. 2003)............................................... 24,25

Language Line Services, Inc. v. Language Services Assoc., LLC (2010 N.D. Cal.) 2010 WL 5115671 at *4........................................................................................... 16,17

Living Designs, Inc. v. E.I. Dupont de Nemours and Co., 431 F.3d 353, 361 (9th Cir. 2005)........ 26

Mancor Medical Management Co. v. VHA Midwest, Inc. 991 F.2d. 803 (9th Cir. 1993). ............. 16

Marchwinski v. Oliver Tyrone Corp., 461 F. Supp. 160, 173 (D.C. Pa. 1978) .............................. 14

Millenkamp v. Davisco Foods Intern., Inc., 2011 WL 3796299 at *1 (9th Cir. 2011) .................... 5

Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988) ............................................ 11,30

National Campaign Committee v. Rogan, 69 F. Supp. 679, 686-87 (D.C. Cal. 1945). .................. 19

North Alaska Salmon Co. v. Pillsbury Council, Inc. ................................................................ 18

Otsuka v. Polo Ralph Lauren Corp., 2007 WL 3342721 at *3. .............................................. 19

Panavision Int'l, L.P. v. Toeppen, (9th Cir. 1998) 141 F.3d 1316, 1322 ................................... 15

Pierce v. Lyman, 1 Cal. App. 4th 1093, 1102 (1991). .......................................................... 19

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004).............. 15,16,17,19

Sinatra v. National Enquirer, Inc., (9th Cir. 1988) 854 F.2d 1191, 1200.................................. 17

Stokes v. Dole Nut Co., 41 Cal. App. 4th 285, 295 (1995)..................................................... 20

TMX Funding, Inc. v. Impero Technologies, Inc., 2010 WL 2509979, at *7,at *4-5 ................... 23

Turner v. Sheriff of Sacramento, 2011 WL 1811028 at *5 (E.D. Cal., 2011) ................................ 4

Walt Disney Productions v. Filmation Associates, 628 F. Supp. 871, 874 (C.D. Cal 1986).......... 13

Winding v. Allstate Ins. Co., 2011 WL,836442 at *2 (RD. Cal.2011) ......................................... 5

Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006). ................................................................................................... 16,17,18,19

***Tuazon v. R.J. Reynolds Tobacco, Co., (9th Cir. 2006) 433 F.3d 1163, 1178. ......................... 12

Lucasfilm Ltd. v. Ainsworth [2009] EWCA Civ. 1328. ......................................................... 12

## STATUTES

18 U.S.C. § 1030(a)(4);........................................................................................... 9, 21

18 U.S.C. § 1030(e)(11). .......................................................................................... 21

18 U.S.C. § 1030(e)(8). ............................................................................................ 22

ERVIN COHEN & JESSUP LLP

28 U.S.C. § 2201. ............................................................................................ 12

California Code of Civil Procedure, § 3426.1 ................................................ 13

*California Code of Civil Procedure*, § 3517 ................................................. 16

California Penal Code § 502 ...................................................................... 9,22,23

Fed. R. Civ. Pro Rule 15 (a) ............................................................................ 2

Fed. R. Civ. Pro Rule 16 (b) (4) ..................................................................... 2

ERVIN COHEN & JESSUP LLP